[No. A070477. First Dist., Div. Three. July 10, 1996.]

KAISER FOUNDATION HEALTH PLAN, INC., Plaintiff and Respondent, v.
HEROICO M. AGUILUZ, Defendant and Appellant.

**COUNSEL**

Heroico M. Aguiluz, in pro. per., for Defendant and Appellant.

Marion's Inn, Kennedy P. Richardson, Mark Palley, Larson & Burnham, Robert J. Lyman and Stephen Q. Rowell for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.—**

### Introduction

Is an attorney, with notice of a client's contractual obligation to indemnify his health care provider from the proceeds of settlement or judgment, liable to the provider if he disburses such funds to the client? We accepted transfer of this case from the appellate department of the superior court to resolve an

apparent conflict between two cases bearing on this issue, *Miller* v. *Rau* (1963) 216 Cal.App.2d 68 [30 Cal.Rptr. 612] and *Brian* v. *Christensen* (1973) 35 Cal.App.3d 377 [110 Cal.Rptr. 688]. We hold that, under the rule of *Miller* v. *Rau*, the attorney in this case is liable for settlement proceeds disbursed to his client in knowing disregard of the health care provider's lien.

## Background

The key facts are not disputed. Paulito Frez, a member of Kaiser Foundation Health Plan, Inc. (Kaiser), was injured in a motorcycle accident. Frez incurred $23,070.26 in medical expenses, which Kaiser paid. Frez hired appellant Heroico M. Aguiluz (counsel) to sue the other driver involved in the accident.

At Kaiser's request, Frez acknowledged in writing that his contract with Kaiser required him to reimburse Kaiser for any amount it paid for treatment of injuries caused by a third person, up to the amount recovered from the third party. Frez specifically agreed he would reimburse Kaiser for the cost of treating the injuries sustained in his motorcycle accident, up to the amount of any judgment or settlement he obtained. The agreement further provided: "I hereby authorize and direct my attorney, if any, to reimburse Kaiser Foundation Health Plan, Inc. by disbursing the money I receive from such a settlement or judgment directly to Kaiser Foundation Health Plan, Inc. . . ."

Four years later, Kaiser wrote to Frez, inquiring about his personal injury action and reminding him of his reimbursement obligation. By way of a note typed on the bottom of Kaiser's letter, counsel responded that the case had not settled and was set for trial in late November 1990.

Frez and counsel settled the personal injury action for $85,000 in May 1991. Settlement negotiations between counsel and Kaiser regarding Kaiser's claim came to nothing. Neither Frez nor counsel paid Kaiser any of the $23,070.26 owed under the agreement. Counsel took no action to protect Kaiser's claim to the settlement proceeds.

Kaiser sued Frez and counsel for breach of contract and constructive trust. After settling with Frez, Kaiser went to trial against counsel in municipal court and obtained a judgment for $23,070.26. The judgment was affirmed and the case certified for transfer to this court to resolve an arguable conflict in the law.

*Discussion*

### I.   *Kaiser's Recovery Was Proper Under Miller v. Rau*

■ *Miller* v. *Rau, supra,* 216 Cal.App.2d 68 (*Miller*) established that an attorney on notice of a third party's contractual right to funds received on behalf of his client disburses those funds to his client at his own risk.[1] The narrow question here is whether *Brian* v. *Christensen, supra,* 35 Cal.App.3d 377 abrogated that rule. We hold it did not.

The *Miller* rule arose from these facts. Rau was an attorney who controlled funds to which he knew Miller was entitled under a joint venture agreement. Miller had notified Rau of a pending declaratory relief action and cautioned him that no proceeds were to be disbursed without Miller's written approval. Rau nonetheless disbursed the funds to Aivex, his clients' general partner. (216 Cal.App.2d at pp. 73-74.)

The court held Rau liable for conversion. "Although the express question of Rau's duty upon receipt of notice of Miller's claim has apparently not arisen in California on facts similar to those in the instant case, courts in other jurisdictions have generally recognized the principle that where one receives money as an agent, to which his principal has no right, and where he receives notice not to pay to his principal prior to disbursement of the funds, an action for money had and received lies against such party. [Citation.] Although [counsel] argues that he had a duty to pay the funds to [Aivex], the correct principle in the factual context of the instant case is expressed in *General Exchange Ins. Corp.* v. *Driscoll* [(1944) 315 Mass. 360 (52 N.E.2d 970)] where the court states ([*id.*] at p. 973): 'There was nothing in the defendant's status as attorney for [his client] . . . which made it his duty to pay to his client money *which he knew* . . . belonged to plaintiff. [Citations.] The defendant had complete control over the money. It was his duty to hold for the plaintiff so much of the proceeds . . . as represented the plaintiff's known interest in it.' " (*Miller, supra,* 216 Cal.App.2d at p. 76, substituted text in first five brackets, italics and ellipses added in *Miller.*)

The *Miller* court concluded that Rau had an affirmative duty to hold the amount Miller claimed. By failing either to hold the funds or file an action in interpleader, Rau "took the risk of having to pay the person rightfully entitled to the funds if it turned out that the person to whom the distribution

---

[1]Counsel does not dispute the appellate department's finding that the reimbursement agreement between Kaiser and Frez created an equitable lien *enforceable against Frez.* His contention, rather, is that such a lien was not enforceable against himself.

was made was not rightfully entitled thereto. [Citation.]" (216 Cal.App.2d at p. 76; see also Rest.2d Agency, § 349 & coms. b, c; Rest.2d Torts, § 233 [agent who turns over property to principal with notice of third person's claim is liable for conversion if claim is valid].)

The *Miller* rule has been followed in a number of California cases. In *McCafferty* v. *Gilbank* (1967) 249 Cal.App.2d 569 [57 Cal.Rptr. 695] (*McCafferty*), McCafferty had obtained a judgment against her ex-husband, Swiger. Swiger hired an attorney, Gilbank, to prosecute an unrelated personal injury action. In a settlement negotiated in part by Gilbank, Swiger agreed to pay McCafferty one-half of the proceeds of his action in satisfaction of her judgment against him. When the action settled, however, Gilbank endorsed settlement drafts, kept his attorney fees, and delivered the remainder to Swiger and other claimants. Swiger disappeared, and McCafferty sued Gilbank for conversion. (*Id.* at pp. 572-574.)

The Court of Appeal reversed a grant of nonsuit. Although McCafferty had failed to file a judicial lien in Swiger's personal injury action, there was a question of fact as to whether Swiger's promise to pay one-half of the settlement proceeds had created an equitable lien. (*McCafferty, supra,* 249 Cal.App.2d at pp. 575-576.) By endorsing the checks over to Swiger without protecting McCafferty's interest, Gilbank exposed himself to liability for conversion under *Miller.* (*McCafferty, supra,* at pp. 576-577; see 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 624, p. 718, citing *McCafferty* ["[A]n agent who turns over money to his principal, with knowledge of a paramount title, may be guilty of conversion."].)

The *Miller* rule was applied, without citation, to an attorney fee lien against a successor attorney in *Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590 [124 Cal.Rptr. 297]. There, Oran hired Attorney Weiss to prosecute his personal injury action. Weiss's fee agreement conferred an express lien on the proceeds of that action. The case settled after Oran had discharged Weiss and replaced him with Attorney Marcus. Although Marcus was served with a " 'Notice of Motion to Establish Priority of Lien,' " he and Oran disbursed the settlement proceeds to themselves without any payment to Weiss. (*Id.* at pp. 594-595.) The court held these allegations stated claims against Marcus for money had and received, conversion, constructive trust, and interference with contract. (*Id.* at pp. 599-601.)

*Miller* was expressly extended to an attorney fee lien against a liability insurer in *Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745 [133 Cal.Rptr. 376]. Lyons retained Attorney Siciliano to prosecute his

personal injury action. The fee agreement contained an express lien on any judgment or settlement. Lyons discharged Siciliano and, proceeding in propria persona, settled the case. Despite having received notice of Siciliano's lien, Fireman's Fund, the tort defendant's liability insurer, paid the full settlement directly to Lyons. (*Id.* at p. 750.)

Siciliano sued Fireman's Fund on various counts. (*Siciliano* v. *Fireman's Fund Ins. Co, supra*, 62 Cal.App.3d at pp. 750-751.) Reversing an order sustaining Fireman's Fund's demurrer, the Court of Appeal held the insurer's knowing failure to protect Siciliano's lien could support a claim under *Miller* and *McCafferty*. (*Siciliano, supra*, at pp. 756-757.) "Even though the law favors voluntary settlements or compromises, it does not favor the making thereof in derogation of the rights of those having a lien on the moneys or to whom other obligations are owing in connection therewith." (*Id.* at p. 758; see also *Pearlmutter* v. *Alexander* (1979) 97 Cal.App.3d Supp. 16, 19-20 [158 Cal.Rptr. 762] [following *Siciliano*].)

In this case, counsel knew about the reimbursement agreement his client had signed, and he negotiated with Kaiser in an attempt to settle its claim for a lesser amount. He nonetheless disbursed the entire amount of the settlement without any attempt to protect Kaiser's interest. On these facts, Kaiser was entitled to recover from him under *Miller*.

## II. *Brian v. Christensen Did Not Abrogate Miller*

Counsel argues that *Miller* and its progeny have been abrogated by *Brian* v. *Christensen, supra*, 35 Cal.App.3d 377 (*Brian*). According to counsel, *Brian* holds that an attorney with knowledge of a health care lien is under no duty to the lienholder unless served with a formal notice of lien. Counsel reads *Brian* too broadly.

In *Brian*, the Director of the State Department of Health Care Services sued to recover damages from a personal injury plaintiff's attorney. The director's theory was that the attorney had wrongfully prevented him from filing a statutory Medi-Cal lien and notice of lien on a settlement recovery the attorney had obtained for his client. In support of this theory, he argued that the attorney had a statutory duty to notify the department of a pending settlement so that it could apply for a statutory lien under former section 14117 of the Welfare and Institutions Code.[2] Absence of such notice, he argued, estopped the attorney from asserting the lien was invalid because

[2]Welfare and Institutions Code former section 14117 gave the director a right to recover money paid for benefits to an injured person from the person liable for that injury by joining the personal injury action as a plaintiff, intervening, applying for a first lien against the judgment, or bringing his own action against the responsible party. (*Brian, supra*, 35

the department had failed to file a lien or notice of lien in the personal injury action. (*Brian, supra,* 35 Cal.App.3d at pp. 379-380.)

The *Brian* majority rejected this theory. In its view, the Medi-Cal lien statute imposed a duty on the client, but not the client's attorney, to notify the director of a pending settlement. (35 Cal.App.3d at p. 381.) After an extremely brief discussion, the *Brian* majority also held the complaint failed to allege facts supporting recovery based either on a third party beneficiary theory or on the existence of a fiduciary relationship between the attorney and the director. (*Id.* at p. 382.)

More telling, for present purposes, is what the *Brian* majority did *not* do. The director apparently never contended that the facts alleged in the complaint could support a claim of equitable lien under *Miller* and its progeny. Probably for that reason, the *Brian* majority never addressed whether the attorney could have been held liable under the *Miller* rule.[3] ▇ An opinion, of course, "is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Accordingly, we are satisfied that *Brian* does not conflict in any meaningful way with the rule articulated in *Miller* and followed consistently since then.[4]

## Disposition

The judgment is affirmed.

Phelan, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied by operation of law (Cal. Rules of Court, rule 27 (e)) August 19, 1996, and appellant's petition for review by the Supreme Court was denied October 30, 1996.

Cal.App.3d at pp. 380-381; *California State Auto. Assn. Inter-Ins. Bureau* v. *Jackson* (1973) 9 Cal.3d 859, 864, fn. 8, 867 [109 Cal.Rptr. 297, 512 P.2d 1201].)

[3]The dissent, on the other hand, opined that the state should have been entitled to an equitable lien on the settlement proceeds. The majority opinion does not respond to the dissent's position, confining its analysis entirely to the estoppel, third party beneficiary, and fiduciary relationship theories of liability. (*Brian, supra,* 35 Cal.App.3d at p. 382.)

[4]Counsel attempts to raise a handful of other contentions, i.e., that he was not unjustly enriched, that Kaiser had no lien against *him,* and that, at any rate, he received inadequate notice of any lien to render him liable on it. The object of the transfer to this court, however, is not "primarily for the benefit of the party who lost in the superior court, but 'to secure uniformity of decision or to settle important questions of law.' " (*Corcoran* v. *Universal Guardian Corp.* (1977) 72 Cal.App.3d 904, 910 [140 Cal.Rptr. 421], quoting Cal. Rules of Court, rule 63(a).) That object is fully served by exercising our discretion to limit our review to the discrete issue certified by transfer. (See *People* v. *Dupuis* (1992) 7 Cal.App.4th 696, 700 [8 Cal.Rptr.2d 923].)