[No. A088938. First Dist., Div. Five. Nov. 3, 2000.]

JOHN E. BARELLA, Plaintiff and Respondent, v.
EXCHANGE BANK, Defendant and Appellant.

## COUNSEL

Horvitz & Levy, Frederic D. Cohen, Mitchell C. Tilner; LaFollette, Johnson, DeHaas, Fesler & Ames, Eric R. Swett and Elizabeth A. Burns for Defendant and Appellant.

Senneff Kelly, Michael D. Senneff and Bonnie A. Freeman for Plaintiff and Respondent.

## OPINION

**RIVERA, J.**[*]—In this case we decide whether a plaintiff suing for defamation can be put at risk for payment of a defendant's costs pursuant to section 998 of the Code of Civil Procedure, if the defendant makes a reasonable settlement offer but attaches to it a condition of confidentiality. In other words, must a plaintiff seeking to vindicate his good name (and to recover damages for its tarnishment) reject a generous—but secret—settlement at his peril?

Consistent with the ancient proverb that "A good name is rather to be chosen than great riches" (Proverbs 22:1),[1] we hold that a confidentiality condition attached to a settlement offer in a defamation action is incapable of valuation and, accordingly, renders the offer invalid for purposes of the cost-shifting provisions of Code of Civil Procedure section 998 (hereafter section 998).[2]

---

[*]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]See also Shakespeare, Richard II, act I, scene 1, lines 177-178, the Bard's poetic restatement of that aphorism, "The purest treasure mortal times afford / Is spotless reputation."

[2]Section 998 provides in pertinent part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) [A]ny party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. [¶] . . . [¶] (c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or

## FACTUAL AND PROCEDURAL HISTORY

The trial transcripts were not provided on appeal. Therefore, we have gleaned the following account from the papers submitted on defendant's unsuccessful motion for summary judgment and from the trial briefs.

Plaintiff John E. Barella is a real estate developer who has lived in Petaluma all his life and has conducted business in the community. In the fall of 1996 Barella purchased some property with three partners. He and his partners applied for a line of credit from defendant Exchange Bank (the Bank) to enable them to develop the land. During the Bank's review of the loan application, one Bank officer sent an internal e-mail message to the Bank's real estate loan administrator stating "Barella is a slime-ball (not by my personal experience, but by local reputation). He was the mastermind of the land deal in Cloverdale, which used the 'funny money' Rosen secured. . . ."

When the loan was declined, the loan package (the loan application form together with tax returns and other financial information) was returned to one of Barella's partners, who in turn gave the documents directly to a mortgage loan broker to whom the partners had also applied. The packet included the e-mail memorandum. The mortgage loan broker read the Bank's memorandum and notified one of Barella's partners. Eventually, all the partners were given copies of the offending memorandum, and word of the document spread through the community.

The reference within the Bank's memorandum to "Rosen" was understood as a reference to Michael Rosen, who had been charged with criminal fraud arising from the financing of a development project in Cloverdale. Barella had actually been an investor in several previous real estate development projects undertaken by Rosen.

Barella sued the Bank for libel, alleging that those who read the memorandum understood it to mean that Barella himself was also guilty of fraud and conspiracy. In April 1999, while the Bank's motion for summary judgment or summary adjudication was pending, the Bank submitted a "C.C.P. § 998 Offer to Compromise" by which the Bank offered to pay Barella $25,000 in consideration for a dismissal with prejudice of his claims against the Bank and an "Agreement to strictly maintain the confidentiality

---

arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration of the case by the defendant."

of the settlement and the settlement amount." Barella did not accept this offer, and it expired.

Subsequently, at the settlement conference, Barella offered to settle the case for a payment of $350,000 to his charity of choice together with a letter of apology. Thereafter, the parties were able to agree upon the wording of a letter of apology, but the Bank insisted that confidentiality be maintained as to the existence and content of the letter. Settlement discussions later held on the eve of trial with the trial judge were equally unsuccessful, as plaintiff continued to adhere to his demand for a public acknowledgement of error by the Bank.

The jury eventually awarded Barella $10,000, and judgment was entered accordingly. Thereafter, both parties submitted memoranda of costs to the trial court—plaintiff for $18,260.77 and the Bank for $183,538.41, including expert witness fees of $128,161.69. Plaintiff moved to strike the Bank's cost bill, and the Bank moved to tax plaintiff's cost bill. The Bank relied upon section 998 for its assertions that plaintiff could not recover his postoffer costs of $7,849.80 and that plaintiff was obligated to pay the Bank's costs. Plaintiff, on the other hand, argued that the Bank's offer was invalid as an offer under section 998 and, in any event, the jury's award was more favorable than the Bank's offer. The trial court granted plaintiff's motion to strike the Bank's cost bill and denied the Bank's motion to tax plaintiff's cost bill.

## STANDARD OF REVIEW

Contrary to plaintiff's assertion, we do not review the trial court's determination for an abuse of discretion. Plaintiff mistakenly relies upon the line of cases holding that the trial court's determination of the reasonableness and good faith of a statutory settlement offer lies within the court's discretion. (E.g., *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753]; *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262-1264 [74 Cal.Rptr.2d 607]; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698-700 [241 Cal.Rptr. 108]; *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [169 Cal.Rptr. 66].) No issue is raised here as to whether the Bank's offer was reasonable or in good faith. Rather, the issue here is the application of section 998 to an undisputed set of facts. That issue is one of law, which we review de novo. (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 329-335 [86 Cal.Rptr.2d 398]; *Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515 [73 Cal.Rptr.2d 450]; see *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 694, 697

[247 Cal.Rptr. 483] (*Valentino*) [validity of settlement offer is issue of statutory interpretation].)

DISCUSSION

### A. *Issue Presented*

■ As a general rule, the prevailing party in a civil lawsuit is entitled to recover its costs. (Code Civ. Proc., § 1032.) However, section 998 establishes a procedure for shifting the costs upon a party's refusal to settle. If the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own postoffer costs and, moreover, must pay its opponent's postoffer costs, including, potentially, expert witness costs. (§ 998, subd. (c)(1).)

In the present case, the trial court declined to shift the costs pursuant to section 998, finding (1) that the Bank's offer was invalid because the condition of confidentiality was impossible to evaluate or, alternatively (2) that the public verdict of $10,000 was more favorable to plaintiff than the Bank's offer of a $25,000 settlement that could not be made public.

We note preliminarily that we do not here address the validity of a confidentiality clause that is attached only to the *amount* of the settlement, as that question is not before us. Nor do we address the validity of secrecy provisions within private, contractual settlement agreements. A plaintiff may freely consent to give up the opportunity for a public acknowledgement of the defendant's wrong, although in certain cases countervailing public policy issues may come into play.[3] The question before us is quite different. Here we are asked to decide whether a plaintiff who does not consent to the confidentiality of a settlement may be required to pay the defendant's postoffer costs because a trial judge could determine that the value of the public verdict was less than the value of the private settlement.

The Bank contends that confidentiality clauses promote settlement and therefore should not operate to vitiate a section 998 offer. The Bank's logic runs as follows: The purpose of section 998 is to promote settlements. Confidentiality *can* promote settlements. Therefore, the purpose of section 998 may be advanced by an offer that includes a confidentiality clause. The

---

[3]See *Cariveau v. Halferty* (2000) 83 Cal.App.4th 126 [99 Cal.Rptr.2d 417]; Doré, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement* (1999) 74 Notre Dame L.Rev. 283; Ispahani, *The Soul of Discretion: The Use and Abuse of Confidential Settlements* (1992) 6 Geo. J. Legal Ethics 111.

syllogism is correct as far as it goes. However, with refreshing candor, even the Bank does not contend that confidentiality clauses *always* promote settlement. The Bank thus admits that the purpose of section 998 may or may not be advanced by a confidentiality condition. There are many instances in which a secrecy clause would be counterproductive to the purpose of section 998, such as, for example, where a plaintiff's primary goal is not to maximize the damage award but to effect the public exposure of unlawful conduct or a health or safety concern.[4] In any event, the fact that a confidentiality clause *may* promote settlement does not answer the question presented in this case, viz., whether in a defamation action a confidentiality clause in a settlement offer is capable of valuation for purposes of the cost-shifting provisions of section 998.

## B. *The Legal Landscape*

In interpreting section 998, this court has placed squarely on the offering party the burden of demonstrating that the offer is a valid one under section 998. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 [11 Cal.Rptr.2d 820].) The corollary to this rule is that a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation. (*Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 732-733 [34 Cal.Rptr.2d 283].) Further, while the statute contemplates that an offer made pursuant to its terms may properly include nonmonetary terms and conditions,[5] the offer itself must, nonetheless, be *unconditional.* (*Hutchins v. Waters* (1975) 51 Cal.App.3d 69, 73 [123 Cal.Rptr. 819].) Thus, for example, an offer to two or more parties, which is contingent upon all parties' acceptance, is not a valid offer under the statute. (*Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 576 [61 Cal.Rptr.2d 790]; *Meissner v. Paulson* (1989) 212 Cal.App.3d 785, 791 [260 Cal.Rptr. 826].) Finally, our Supreme Court has held that the legislative purpose of section 998 is generally better served by "bright line rules" that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement. (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 272 [276 Cal.Rptr. 321, 801 P.2d 1072]; see also *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 391 [85 Cal.Rptr.2d 4].)

Against this background we assess the Bank's offer in this case.

---

[4]See footnote 3, *ante.*

[5]Subdivision (b) of section 998 permits either party to "serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered *in accordance with the terms and conditions* stated at that time." (Italics added.)

## C. *Valuation of Nonmonetary Terms in a Section 998 Offer*

We begin our analysis with *Valentino, supra,* 201 Cal.App.3d 692, in which the appellate court held a settlement offer was ineffective to give the trial court authority to shift costs pursuant to section 998. In that case the defendant had offered to pay the plaintiff $15,000 in return for her release not only of the defendant in the personal injury action, but also of the defendant's attorneys and insurance carrier from any other potential claims, including insurance bad faith. The jury returned a net verdict of $9,750 in favor of the plaintiff. The defendant sought to recover costs pursuant to section 998.

The court first observed that, in cases where the offer includes a nonmonetary component, in order to determine whether the plaintiff received a judgment more favorable than the defendant's offer, the offer must be evaluated in light of all the terms and conditions attached to that offer and not simply the monetary amount of the offer. "[Section 998] does not . . . authorize cost-shifting every time the *monetary* value of the damage award is less than the *monetary* 'term' of the defendant's statutory offer." (*Valentino, supra,* 201 Cal.App.3d at p. 697, italics in original.) The *Valentino* court reasoned that the monetary offer in that case was "not really $15,000 *to settle the causes of action at issue in the instant case.* Instead that $15,000 is diluted by the worth of other present and future possible causes of action Ms. Valentino must surrender in order to receive the defendant's cash." (*Id.* at p. 698, italics in original.)

The court further observed that certain nonmonetary terms and conditions "may effectively negate the monetary term of the offer. Thus, a tender of $15,000 to be paid in Confederate dollars would be no offer at all. Or the other terms and conditions may impose preconditions to receipt of the money which the courts will refuse to honor. Thus, a tender of $15,000 conditioned on the plaintiff moving to another state or never marrying might be deemed to impose conditions which are against public policy and thus not to be encouraged by the courts. Or, the other terms and conditions may reduce the actual value of the monetary term so that a damage award in a lesser sum actually would be 'more favorable' not less favorable than the statutory offer the defendant made. *Or finally, the other terms and conditions may render it difficult to accurately value the monetary term of the offer so the court cannot fairly determine whether the damage award is 'more favorable' or less favorable than the statutory offer.*" (*Valentino, supra,* 201 Cal.App.3d at pp. 697-698, italics added.)

The court then found that the condition requiring the plaintiff to forgo other causes of action not embodied in her complaint "introduced an imponderable which makes it impractical if not impossible to accurately and fairly

evaluate the offer" for purposes of determining whether the jury's award was a more favorable result than the settlement offer. (*Valentino, supra,* 201 Cal.App.3d at p. 699.) The court observed that the trial court would need to collect a host of facts unrelated to the merits of the personal injury action in order to identify all potential claims. Further, the trial court would have to gather additional facts about the probabilities for success and the possible recoveries on such potential claims. Then the court would need to calculate a value for each potential claim and determine whether the total exceeded the jury's verdict in the personal injury action. This task, the appellate court concluded, "would require the [trial] court to engage in wild speculation bordering on psychic prediction." (*Ibid.*) As a result, the appellate court found it impossible to determine whether the plaintiff received a less favorable result than she would have received under the defendant's statutory offer of compromise. (*Id.* at p. 700.) The court held the offer ineffective to shift the costs under section 998. (*Valentino, supra,* at p. 701.)

### D. *Validity of the Bank's Offer Under Section 998*

In the present case, the Bank's offer pertained only to the action pending before the court; it did not purport to resolve any other claims. (Cf. *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 908 [32 Cal.Rptr.2d 740].) Nevertheless, we conclude that the value to a particular plaintiff of public vindication (or, conversely, the negative value of confidentiality) is so highly subjective and elusive that no court can determine its monetary worth. (*Valentino, supra,* 201 Cal.App.3d at p. 698.) Therefore, in a defamation action, a settlement offer that by its terms cannot be made public, cannot be effective under section 998.

In reaching this conclusion we are guided by certain principles, primary among which is the foundational premise articulated by Justice Brennan in *Rosenblatt v. Baer* (1966) 383 U.S. 75 [86 S.Ct. 669, 15 L.Ed.2d 597], that our "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." (*Id.* at 86 [86 S.Ct. at p. 676].) Justice Stewart, in a concurring opinion, assigned constitutional proportions to an individual's interest in protecting his or her good name.[6] He also noted that "[t]he destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem." (*Id.* at p. 93 [86 S.Ct. at p. 680] (conc. opn. of Stewart, J.).)

---

[6]"The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty. The protection of private personality, like the protection of life itself, is left primarily to the individual States under the Ninth and Tenth Amendments. But this does not mean that the right is entitled to any less recognition by this Court as a basic of our constitutional system." (*Rosenblatt v. Baer, supra,* 383 U.S. at p. 92 [86 S.Ct. at p. 679] (conc. opn. of Stewart, J.).)

Noting that other losses, such as the wrongful death of a loved one or the loss of a limb, are also "beyond the capacity of the law to redeem" (*Rosenblatt v. Baer, supra,* 383 U.S. at p. 93 [86 S.Ct. at p. 680] (conc. opn. of Stewart, J.)), we hasten to restate what is and is not here being decided. The issue is not whether a court or jury is capable of placing some monetary value on loss of reputation, *involuntarily* suffered, as compensation (albeit incomplete) for the victim. As the Bank correctly argues, compensatory damages for loss of reputation are no more or less difficult to calculate than the value of pain and suffering or loss of consortium. But that is not the question before us. Here, the bargain is being struck in advance. Here, we must decide whether a court can assign a value to a plaintiff's decision *not* to trade away the opportunity to vindicate his or her good name.

We also observe that confidentiality is not a form of relief that the Bank could have obtained from a court even had the Bank prevailed at trial. At most, the Bank could have obtained a finding that it did not defame plaintiff and therefore was not liable on the merits. By including the confidentiality condition in its offer of compromise, the Bank injected an extrajudicial component that a trial court is in no position to evaluate. As we have stated, the worth to an individual of the chance to clear his or her good name is simply too subjective.

In its reply brief the Bank poses a hypothetical which well illustrates the problem. The Bank asks us to consider, for example, a confidential offer of $10 million and a plaintiff's verdict in the amount of $1. The Bank then contends: "Under plaintiff's reasoning, the $1 judgment would be more favorable than the $10 million offer, *as a matter of law,* because the judgment represents public vindication. To state the position is to refute it." We must disagree. Suppose the plaintiff in the Bank's hypothetical had been publicly accused of molesting children or of transmitting a venereal disease. How would the trial judge go about putting a price on the plaintiff's chance to clear his or her name? The Bank's hypothetical merely underscores the extreme difficulty—if not impossibility—of making such a valuation.

Indeed, the hypothetical posed by the Bank serves to reinforce our conclusion: If the defendant in a defamation action places a $10 million price tag on secrecy then can we not expect that the plaintiff's concomitant desire for public vindication would be worth the same or more? And if this postulation is correct, it leads to the same *practical* result—the net value of a public verdict in the plaintiff's favor will *always* equal or exceed defendant's offer. Indeed, where confidentiality is more important to the defendant than money, the defendant could purposely overinflate the monetary term of an offer and force the plaintiff into a Hobson's choice: either (1) accept the

offer and give up the right to a public verdict, or (2) decline the lucrative monetary offer (knowing there will not be a better award at trial) and simply accept the risk of paying defendant's costs as an additional price for public vindication. Placing an offeree in such an untenable position is inconsistent with the purpose of section 998.

The more difficult hypothetical is the case in which the defendant makes a substantial monetary offer and the defamation relates to an ostensibly minor matter. While this is a closer question, it is this court's view that the trial judge cannot assess the relative importance to any individual of his or her good name in the business community or neighborhood, no matter how relatively trivial the issue may seem to a neutral, dispassionate jurist. The contention that in a defamation action a judge can attach a monetary value to an individual's opportunity for public vindication (in matters either great or small) contains as its tacit premise the notion that "everyone has a price"— that reputations can be bought and sold like any other commodity. We are not prepared to validate that premise in the service of promoting settlements and clearing dockets.

We conclude that the task of valuing a confidentiality clause attached to a settlement offer in a defamation action is too subjective and, therefore, cannot be done. Thus, a confidentiality condition in such a settlement offer will render the offer invalid for purposes of shifting costs to the plaintiff.

In light of that conclusion, we reject the trial court's alternative finding that plaintiff's recovery in a verdict made public was more favorable than the Bank's settlement offer conditioned upon confidentiality. To reach that decision on the relative values of the verdict and the offer, the trial court must necessarily have put a value on the vindication plaintiff received from the public verdict. As we have explained, we conclude that such valuation is an impossible task.

### DISPOSITION

The order granting plaintiff's motion to strike defendant's cost bill and the order denying defendant's motion to tax plaintiff's cost bill are affirmed. Costs on appeal are awarded to respondent, John E. Barella.

Jones, P. J., and Stevens, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 24, 2001.