Filed 4/25/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES STEVEN SANFORD, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> JACY LEANN RASNICK, ET AL., <br><br>     Defendants and Respondents. | A145704 <br><br> (Alameda County <br> Super. Ct. No. RG13668115) |

Appellant Charles Sanford was injured when his motorcycle was struck by a car owned by William Rasnick and driven by his daughter Jacy (when referred to collectively, the Rasnicks). Sanford sued both Rasnicks, who made a joint Code of Civil Procedure section 998 offer (998 offer) for $130,000.[1] The offer lapsed, the case went to trial, and a jury returned a verdict for less than $130,000.

The trial court held the 998 offer valid, and ordered that the Rasnicks could recover some expert witness fees and other costs. The court entered a separate order taxing certain of Sanford's costs.

Sanford appeals from both orders, contending the 998 offer was not valid and the court erred in connection with its rulings on his cost items. We agree with Sanford on both accounts, and remand the matter with instructions to enter a new order denying the Rasnicks any costs, and hold a new hearing to analyze the Rasnicks' motion to tax certain of Sanford's cost items in accordance with the law.

---

[1] All undesignated references are to the Code of Civil Procedure.

## DISCUSSION

On June 13, 2011, Sanford was injured when a car driven by 17-year-old Jacy ran a stop sign and struck his motorcycle. The car was owned by Jacy's father, William.

On February 20, 2013, Sanford filed suit against the Rasnicks. The complaint alleged two counts: (1) vehicular negligence against Jacy, and (2) general negligence against both Rasnicks. The second count repeated the same factual basis of liability as in the first count—i.e., that Jacy had negligently run a stop sign and caused the accident and Sanford's injuries—and also alleged that William "owned the vehicle that [Jacy] was driving and negligently entrusted said vehicle to her."

As described in the Rasnicks' respondent's brief, Jacy and her father "were covered under the same policy of automobile insurance and were represented by attorney, Michael Welch. [Citation.] Mr. Welch filed a joint answer on behalf of both Respondents, Jacy Leann Rasnick and her father, William Rasnick which consisted of a general denial and several affirmative defenses. [Citation.]" As will be seen, the insurance aspect apparently factored into the strategy on behalf of the Rasnicks.

The trial court initially set the case for trial for December 1, 2014, the effect of which was that the discovery cutoff, including expert discovery, was calculated from that date. The parties disclosed experts in September 2014 and all discovery, including expert discovery, closed on November 1, 2014, by which date all expert depositions had been concluded. Meanwhile, the Rasnicks withdrew two of their experts, Carol Hyland and William Hoddick, neither of whom was ever deposed.

On December 24, 2014, after discovery had closed and after the last deposition had concluded, the Rasnicks served a section 998 offer. It provided in its entirety as follows:

"Defendants, JACY LEANN RASNICK and WILLIAM RASNICK hereby offer, pursuant to CCP §998, to compromise all of the claims, allegations and actions of plaintiff CHARLES STEVEN SANFORD for $130,000 in exchange for each of the following:

2

"1.   The entry of a Request for Dismissal, with prejudice, of the entire action (including any and all complaints, cross-complaints or actions filed by any party against or as to these defendants) and/or a finding that this compromise was entered into and constitutes a good faith settlement or compromise as to any cross-complainants; and

"2.   The notarized execution and transmittal of a written settlement agreement and general release.  Each party will bear their own fees, costs and expenses.

"This offer will expire in 30 days or the commencement of trial, whichever is sooner, unless earlier withdrawn.

"Any acceptance of this offer must be made by a written statement, signed by counsel for the accepting party (or party, if in pro per), that the offer is accepted on the terms and conditions stated above.  Acceptance may be made by signing the Acceptance of Offer to Compromise below and returning it to counsel for the offering party." (Bold type omitted.)

Neither the offer itself nor any other communication from counsel for the Rasnicks purported to apportion the $130,000 offer amount between them.  Nor did any communication from the Rasnicks' counsel ever disclose any of the terms that they planned to put into the "written settlement agreement" required as a condition to accepting their offer.

The offer lapsed, and the case proceeded to trial, which began on March 24, 2015. On March 30, Sanford moved to amend his complaint to conform to proof by adding a cause of action for limited joint and several liability under Vehicle Code sections 17150 and 17708.[2]  The Rasnicks opposed this motion and refused to stipulate that they were jointly and severally liable, either pursuant to these Vehicle Code sections or otherwise. The trial court granted the motion, and Sanford filed his "Amendment to Complaint to

---

[2] These sections provide that any adult, parent, or guardian who entrusts a motor vehicle to a minor is jointly and severally liable for that minor's liability arising out of the operation of a motor vehicle in the State of California, with their companion sections "capping" their joint and several liability at $15,000.

3

Conform to Proof" on April 1, 2015. With that, Sanford dismissed his negligent entrustment cause of action against William.

The jury returned a special verdict finding Jacy negligent and setting Sanford's damages at $143,795. The jury also found Sanford to be 20 percent at fault, reducing the net award to Sanford to $115,036. Adding Sanford's recoverable pre-offer costs, the total judgment would be some $122,000—less than the 998 offer.

Following entry of judgment, on May 8, Sanford filed a memorandum of costs (cost bill) seeking $7,881.25. On May 19, the Rasnicks filed their cost bill seeking $28,150.02. This included all of their post-offer costs and their expert witness fees as penalties under section 998, and also deposition costs for the expert deposition of Robert Cargill, taken on November 20, 2014, apparently under the theory that this was a recoverable post-offer cost because the court reporter delayed sending out the invoice for that deposition until after the 998 offer.

On or about May 21, the Rasnicks filed their motion to tax, objecting to essentially every item on Sanford's cost bill.

On June 1, Sanford filed his motion to tax. Sanford objected to the validity of the 998 offer and requested that the Rasnicks' cost bill be stricken in its entirety. Alternatively, Sanford objected to the Rasnicks' application to recover some of their pre-offer deposition costs, their private investigators' fees, and the fees they claimed they had paid to two withdrawn experts.

On June 11, both sides filed their oppositions to the motions to tax. Included within the Rasnicks' opposition were authenticated copies of the receipts and invoices supporting the claimed costs.

On June 23, the trial court issued its tentative rulings, both favorable to the Rasnicks. The tentative rulings were set forth in three, single-spaced pages, with no paragraphs.

Sanford contested both tentative rulings, and argument was held on June 24. The argument was quite lengthy, in the course of which Sanford's counsel went to great

4

lengths to attempt to demonstrate where, and why, the tentative rulings were wrong. We will not detail all that here, but do note two items of interest.

First, Sanford's counsel pointed to the tentative ruling that taxed Sanford's costs in Item 1 (in limine motions) and Item 4 (deposition costs) because, quoting the tentative, "Defendants correctly note that Plaintiff did not submit any evidence supporting his claim that he incurred these fees" and that "Plaintiff must provide the Court and Defendants with documentation to support his claim that such fees were incurred." Counsel for Sanford pointed out that the tentative was incorrect because the receipt and invoices in question were attached as exhibits "B" and "C", respectively, to his declaration in opposition to the motion to tax. Sanford's counsel then offered to give the trial court a second courtesy copy of the conformed-stamped declaration attaching these receipts and invoices, which he had in court with him. The trial court said nothing.

Second, another item in the tentative ruling taxed the mediator's fee, with this language: "Defendant's Motion to Tax Plaintiff's claimed costs incurred in participating in mediation and for delivering papers in connection with motions (Item 13), in the sum of $1,646.53, is GRANTED. The costs and expenses described in Item 13 of the memorandum of costs are not allowed. See CCP § 1033.5(a)." Addressing that as the final subject in his argument, Sanford's counsel concluded as follows: as to the mediator's fee, "I cited several cases in the briefing. That is within the Court's discretion. And, but the trend now, in all of the recent cases, without exception, that I'm aware of, is to allow the mediator's fee when the mediation has been ordered by the Court, and there is language that the public policy strongly supports the awarding of that fee. [¶] And the Court's intended ruling gave no basis for denying it, and I was curious whether the Court wanted to share with us the basis for denying the mediator's fee, and, if not, then I will sit down." The court's response: "Thank you."

On or about June 24, the trial court issued its order on the Rasnicks' motion to tax costs. As best we can tell, with the exception that there is an introduction and that it has paragraphs, the substance of the order is word for word the tentative ruling. It reads as follows:

5

"The Motion to Tax Costs was set for hearing on 06/24/2015 at 02:30 PM in Department 522 before the Honorable Dennis Hayashi. The Tentative Ruling was published and was not contested.

"IT IS HEREBY ORDERED THAT:

"The tentative ruling is affirmed as follows: The Motion of Defendants and Judgment Debtors to Tax the Memorandum of Costs of Plaintiff and Judgment Creditor Charles Stephen Sanford, pursuant to Rule of Court 3.1700, is GRANTED as follows:

"1. Defendants' Motion to Tax Plaintiff's claimed filing fees for his motions in limine (Item 1), in the sum of $120.00, is GRANTED. Defendants correctly note that Plaintiff did not submit any evidence supporting his claim that he incurred these fees. In addition, Plaintiff is not authorized to recover these fees because he did not obtain a judgment more favorable than the CCP § 998 Offer to Compromise served by Defendants on December 24, 2014. See CCP § 998(c)(1).

"2. Defendants' Motion to Tax Plaintiff's claimed deposition costs (Item 4) in the sum of $4,328.30 is GRANTED. Plaintiff must provide the Court and Defendants with documentation to support his claim that such fees were incurred.

"3. Defendants' Motion to Tax Plaintiff's claimed costs of making models, exhibits and blowups (Item 11), in the sum of $127.66, is GRANTED. Plaintiff must provide the Court and Defendants with documentation to support his claim that such fees were incurred. In addition, Plaintiff is not authorized to recover these fees because he did not obtain a judgment more favorable than the CCP § 998 Offer to Compromise served by Defendants on December 24, 2014. See CCP § 998(c)(1).

"4. Defendants' Motion to Tax Plaintiff's claimed costs incurred in participating in mediation and for delivering papers in connection with motions (Item 13), in the sum of $1,646.53, is GRANTED. The costs and expenses described in Item 13 of the memorandum of costs are not allowed. See CCP § 1033.5(a)."

Sanford timely appealed from both orders.

## DISCUSSION

### The General Rules Regarding Costs

Citing numerous cases, we set forth the general principles in *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 773–774 (*Ladas*):

" '[S]ection 1033.5, enacted in 1986, codified existing case law and set forth the items of costs which may or may not be recoverable in a civil action. [Citation.]' [Citation.] An item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' (§ 1033.5, subd. (c)(2).)

"If the items appearing in a cost bill appear to be proper charges, the burden is on the party seeking to tax costs to show that they were not reasonable or necessary. On the other hand, if the items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs. [Citations.] Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] However, because the right to costs is governed strictly by statute [citation], a court has no discretion to award costs not statutorily authorized. [Citations.]"

### The 998 Offer Was Not Valid

The Rasnicks' 998 offer is set forth in full above. Sanford contends it does not meet the requirements of section 998 for two separate, and independent, reasons: (1) it does not apportion the offer between defendants; and (2) it improperly contains a request for a "Settlement Agreement." We agree with Sanford on the second point, so need not address the first.

The effect of a valid 998 offer[3] that is not accepted is to establish a fee shifting procedure, shifting some post-offer costs upon a party's refusal to settle. If the party who

---

[3] The relevant portion of Code of Civil Procedure section 998 provides as follows: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and

7

prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own post-offer costs and, more, must pay its opponent's post-offer costs, including potentially expert witness costs. (§ 998, subd. (c)(1).)

Our colleagues in Division Five distilled the rules governing 998 offers in *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799–800: "In interpreting section 998, this court has placed squarely on the offering party the burden of demonstrating that the offer is a valid one under section 998. [Citation.] The corollary to this rule is that a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation. [Citation.] Further, while the statute contemplates that an offer made pursuant to its terms may properly include nonmonetary terms and conditions, the offer itself must, nonetheless, be *unconditional*. [Citation.] Thus, for example, an offer to two or more parties, which is contingent upon all parties' acceptance, is not a valid offer under the statute. [Citations.] Finally, our Supreme Court has held that the legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement. [Citations.]"(Fn. omitted.) (Also see *Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 ["[t]he burden of assuring that the offer complies with section 998 falls on the offeror"]; *Chen v. Interinsurance Exchange of Auto. Club* (2008) 164 Cal.App.4th 117, 122 ["we interpret against [the offeror] any ambiguity in the [section 998] offer"].)

Since the issue presents no disputed facts, the interpretation of a section 998 offer and its application are reviewed de novo. (*Rouland v. Pacific Specialty Ins. Co.* (2013)

---

shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover *postoffer* costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (Code Civ. Proc., § 998, subd. (c)(1).)

220 Cal.App.4th 280, 285, fn. 3; *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1113.)

Here, as quoted, the 998 offer required that Sanford agree to enter into a "settlement agreement and general release." Sanford claimed that such condition invalidated the offer. The trial court disagreed, citing one case: *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259. The Rasnicks rely on *Linthicum v. Butterfield* and also on *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, both of which are cited in the Rasnicks' argument that "Case Law Specifically Allows for Settlement Agreements/Releases as a Term in a Section 998 Offer to Compromise."

The case law does allow for releases. (See *Linthicum v. Butterfield, supra,* 175 Cal.App.4th at p. 270 [under 998 offer, the "parties are to bear their own costs with a mutual release of all current claims . . . ."]; *Goodstein v. Bank of San Pedro, supra,* 27 Cal.App.4th at p. 905 [998 offer included "execution and transmittal of a General Release . . . ."].)

But a release is not a settlement agreement, and the Rasnicks have cited no case, and we have found none, holding that a valid 998 offer can include a settlement agreement, let alone one undescribed and unexplained.

The Rasnicks apparently attempt to explain their offer as being standard in the automobile insurance defense context. In their words: "As commonly set forth in automobile, insurance defense cases, [the Rasnicks'] section 998 offer in this case, if accepted, required [Sanford] to sign a document entitled 'Settlement Agreement and Release' and execute a Dismissal of the entire action with prejudice." Or, as the Rasnicks put it at another point, their 998 offer "is a standard, insurance defense offer that requires that [Sanford] execute a document entitled 'settlement agreement and release' along with a Dismissal . . . ." Maybe it is common. Or standard. Maybe not. That does not make it valid.

As most experienced trial lawyers and judges appreciate, the terms of a settlement agreement can be the subject of much negotiation. And the terms can be problematical. For example, settlement agreements typically contain a waiver of all claims "known and

9

unknown," a provision that has been held to invalidate a section 998 offer. (See *McKenzie v. Ford Motor Company* (2015) 238 Cal.App.4th 695, 706 [section 998 offer conditioned upon release of all known and unknown claims and release of claims that had not yet accrued invalid]; *Valentino v. Ellion Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697–698 [condition that offeree waive claims not encompassed within the current lawsuit invalidated the offer].)

The terms of a settlement agreement can, and frequently do, implicate the protection of lienholders, which could be involved here, where there was a medical lien. Indeed, this subject is so important that attorneys risk personal liability if they "settle around" known liens. (*Kaiser Foundation Health Plan, Inc. v. Aguiluz* (1996) 47 Cal.App.4th 302, 305, disapproved on other grounds in *Snukal v. Flightways Mfg., Inc.* (2000) 23 Cal.4th 754, 775.) And the State Bar may impose discipline upon an attorney who purposely disregards a valid lien. (See *Matter of Respondent P.* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 622; *Kennedy v. State Bar* (1989) 48 Cal.3d 610, 617–618 [attorney disbarred for purposely failing to pay client's doctor bills from settlement proceeds].)

Finally, and as every lawyer who has settled a case will appreciate, the issue as to Civil Code section 1542 in a release can be the subject of much discussion.

Here, the required "settlement agreement" was not described or revealed, Sanford having no understanding what he would have to agree to. In the words of Sanford's brief, he was "left to guess at what terms [the Rasnicks] might insist upon, and he had to accept or reject the offer *without knowing what those terms were.* This omission made it essentially certain that, had [Sanford] accepted their offer, the parties would have wound up in a disagreement over what terms could be included in the settlement agreement."

Sanford sums up with this: "The consequences of what [the Rasnicks] are asking the Court to do here should not be overlooked. Were the State's appellate courts to start allowing section 998 offers to condition acceptance upon the offeree's agreement, sight-unseen, to enter into a settlement agreement, havoc would ensue. Disputes would erupt and become routine over what offerors can and cannot place into these jack-in-the-box

10

settlement agreements hidden in their 998 offers.  And what's worse, *the trial courts would be powerless to adjudicate them.*  [Citation.]  Such a ruling would generate scores of appeals of trial court rulings on post-trial cost motions.  [¶] The Court should decline [the Rasnicks'] invitation to open a Pandora's box of post-trial litigation and appeals by injecting needless uncertainty and inviting gamesmanship into what is a relatively settled area of the law.  The Court should rule that [the Rasnicks'] placement of a 'settlement agreement' requirement in their section 998 offer invalidated the offer."  We agree, and we so rule.

### The Trial Court Rulings that Certain Cost Items Were "Not Allowed" Was Error

Sanford's opening brief argued that the trial court erred in taxing his costs in several particulars.  Following briefing, the parties resolved some of the issues, so Sanford's reply brief addresses the only two issues that remain:  the rulings taxing some attorney service charges and his share of the fee in a court-ordered mediation.

To recap, the trial court ruled as follows:  "Defendants' Motion to Tax Plaintiff's claimed costs incurred in participating in mediation and for delivering papers in connection with motions (Item 13), in the sum of $1,646.53, is GRANTED.  The costs and expenses described in Item 13 of the memorandum of costs are not allowed.  See CCP § 1033.5(a)."  Sanford contends this was error.  We agree.

Under section 1033.5, "An item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' " (*Ladas, supra,* 19 Cal.App.4th at p. 774.)

Neither subdivision (a) nor (b) states whether attorney service charges for court filings and deliveries or mediators' fees are allowable or not.  Thus, these costs fall within the "discretionary category," subdivision (c)—that is, they are allowable if in the court's discretion they were "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."

As indicated from the order, and as apparently confirmed at the hearing below—where the court did not respond to Sanford's counsel's request to have the court explain how its discretion was exercised—the court did not exercise any discretion. This was error. As we recently confirmed in *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 97: a "failure to exercise discretion is 'itself an abuse of discretion.' (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515. As we put it in *Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392, ' "Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal." ' "

Moreover, the trial court's statement that these two items of costs "are not allowed" is wrong, as many cases have held.

We ourselves have affirmed such awards, including in *Ladas, supra,* 19 Cal.App.4th at p. 776, where we upheld a trial court's allowance of attorney service messenger and delivery charges, and in *Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1207–1209, where we upheld a trial court's exercise of discretion to award mediation expenses as costs under subdivision (c). (Also see *Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 30 [same day messenger fees to file supplemental brief and peremptory challenge to assigned trial judge]).

Here, the trial court never exercised any discretion on either of those two cost items because it erroneously believed it had no discretion to award these costs. And it reached that conclusion because it could not find either item listed among the costs allowable under subdivision (a) of section 1033.5. That ruling was error.

The Rasnicks' response is that the "trial court properly exercised its discretion in denying" the costs. We read the record differently, that the trial court not only did not exercise its discretion, but that it ruled that these costs could not be recovered. This is simply wrong.

## DISPOSITION

The orders are reversed, and the matter remanded to the trial court (1) to enter a new order granting Sanford's motion to tax the Rasnicks' costs; and (2) to conduct a new

12

hearing on the issue of the recoverability of the attorney service costs and the mediator's fee in accordance with the law.  Sanford shall recover his costs on appeal.

_____
Richman, J.

We concur:

_____
Kline, P. J.

_____
Miller, J.

A145704; *Sanford v. Rasnick*

14

Trial Court:                            Alameda County Superior Court

Trial Judge:                            Hon. Dennis W. Hayashi

Attorney for Plaintiff and Appellant:       Seiler Epstein Ziegler & Applegate, LLP, Mark Lewis Mosley

Attorneys for Defendants and Respondents:    Philip M. Anderson & Associates, Jeanette N. Little