Filed 3/19/21  Ayala Boring v. HPS Mechanical CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AYALA BORING, INC., | D076054 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00092049-CU-CO-CTL) |
| HPS MECHANICAL, INC., | |
| Defendant, Cross-complainant, and Appellant. | |

APPEALS from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Klein, Denatale, Goldner, Cooper, Rosenlieb & Kimball and Catherine E. Bennett; Eastman McCartney Dallmann, N. Thomas McCartney and Matthew C. McCartney for Defendant and Appellant.

Thomas Lucas, Timothy D. Lucas; Mahoney & Soll and Paul M. Mahoney for Plaintiff, Cross-defendant and Appellant.

This is the second appeal in this case and it is based on the same underlying facts as the first appeal in *Ayala Boring, Inc. v. HPS Mechanical, Inc.* (Sept. 17, 2018, D070176) [non.pub. opn.] (*Ayala I*).)  On remand after

1

*Ayala I*, the trial court denied the motion filed by HPS Mechanical, Inc. (HPS) for an award of its attorney fees and denied the motion filed by Ayala Boring, Inc. (Ayala) to tax certain costs requested by HPS. On appeal, HPS challenges the court's denial of its attorney fees. In its cross-appeal, Ayala challenges the court's denial of its motion to tax certain of HPS's costs.

FACTUAL AND PROCEDURAL BACKGROUND[1]

HPS entered into a contract with the City of San Diego (City) to serve as the prime contractor for City's South Mission Valley trunk sewer project (Project). HPS entered into a subcontract (Subcontract) with Ayala, an underground pipeline boring contractor, for Ayala to install casings and sewer lines under Interstate 8 (I-8) at two locations that were part of the Project. One location was near the interchange of I-8 and Interstate 15 (I-15), at which Ayala was to bore a tunnel under I-8, install a casing, and then install a customer-furnished sewer pipe through that casing. When Ayala encountered unanticipated larger rocks, boulders, or other materials at that location, it requested additional compensation for the different site conditions and ultimately City, HPS, and Ayala agreed to a change order to pay Ayala an additional $203,000 for its extra work. Also, during Ayala's work at that location, a rising, or "heaving," of the lanes of I-8 was discovered immediately above the area where Ayala was boring and grouting for installation of the casing. Believing that Ayala's work caused that heaving, HPS demanded that Ayala repair the heaving damage and informed Ayala it would withhold its payment of the $203,000 change order amount until such

---

1 For a more detailed description of the underlying facts in this case, see *Ayala I*, *supra*, at pages 4 to 12.

repairs were made. When Ayala refused to repair that damage, HPS made the repairs at a cost of $199,559.34.

Ayala filed a complaint against HPS and its bonding companies alleging a breach of contract cause of action and seeking payment for its extra work performed for the different site conditions and payment of other amounts that HPS wrongfully retained. HPS filed a cross-complaint against Ayala alleging a breach of contract cause of action that sought reimbursement of its costs to repair the heaving damage. The trial court granted Ayala's motion to amend its complaint to conform to proof and add a common count for money had and received. The jury returned special verdicts finding: (1) in favor of HPS on Ayala's breach of contract cause of action; (2) in favor of Ayala on its common count for money had and received; and (3) in favor of Ayala on HPS's breach of contract cause of action. The jury calculated Ayala's damages to be $249,470, which the court awarded to Ayala. The court subsequently awarded Ayala prejudgment interest, attorney fees and costs as the prevailing party on its complaint, and costs for prevailing on HPS's cross-complaint.

In the first appeal in this case, we reversed the judgment to the extent it found in favor of Ayala on its common count for money had and received, and, because of the then-mixed results obtained by the parties, we also reversed the court's awards to Ayala of attorney fees and costs.[2] (*Ayala I, supra*, at pp. 28, 40-41.) We remanded the matter with directions that the trial court conduct further proceedings and enter a new judgment consistent

---

[2]    We also reversed the court's award of prejudgment interest on the amount of compensatory damages awarded by the jury on Ayala's common count for money had and received. (*Ayala I, supra*, at p. 40.)

with our opinion.  (*Id.* at p. 40.)  Also, because HPS prevailed on its appeal, we concluded that HPS was entitled to its costs on appeal.  (*Id.* at p. 41.)

On remand, the trial court denied HPS's motion for an award of attorney fees as the prevailing party on the contract, finding that there was no prevailing party on the contract claims.  The court awarded HPS various trial costs and costs on appeal, including expert witness fees, mediator fees, reporter's fees, and surety bond premiums.  The court then entered an amended judgment that found in favor of HPS on Ayala's complaint and ordered Ayala to pay HPS costs and disbursements totaling $205,095.63.

In its appeal challenging the amended judgment, HPS contends that the trial court erred by finding there was no prevailing party on the contract claims and that it should instead be awarded its actual attorney fees pursuant to the Subcontract's provision for awards to prevailing parties of their attorney fees and costs.  In its cross-appeal, Ayala contends the court erred by awarding HPS:  (1) its expert witness fees as the prevailing party on the contract claims; (2) its mediation fees incurred for mediation of a different case; (3) its reporter's fees for daily trial transcripts; and (4) its premiums for a stop notice release bond and a surety bond on appeal.  Based on our reasoning *post*, we reverse the court's awards to HPS of its expert witness fees and mediation fees incurred for mediation of the different case and, in all other respects, affirm the amended judgment.[3]

---

[3]    HPS and Ayala filed multiple requests for judicial notice (RJN) in support of their arguments on appeal.  On November 22, 2019, HPS filed an RJN asking that we take judicial notice of certain portions of the reporter's transcript in *Ayala I*.  We grant that request.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  On May 22, 2020, Ayala filed an RJN asking that we:  (1) take judicial notice of certain other portions of the reporter's transcript in *Ayala I*, which request we grant (Evid. Code, §§ 452, subd. (d), 459, subd. (a)); and (2) take judicial notice of a complaint Ayala filed against HPS in the San

DISCUSSION

*HPS'S APPEAL*

I

*Order Denying HPS's Motion for Attorney Fees*

HPS asserts that the trial court erred by denying its motion for attorney fees. In particular, it argues that the court erred by finding there was no prevailing party on the contract claims in this action and that the court should instead have awarded HPS its actual attorney fees pursuant to the Subcontract's attorney fee provision.

A

In March 2011, City, HPS, and Ayala agreed to a change order to pay Ayala an additional $203,000 for its extra work for the different site conditions for its boring work at the intersection of I-8 and I-15. City thereafter paid HPS $540,673.50, which amount included $203,000 for payment to Ayala for the different site conditions. However, believing that Ayala's work caused the freeway heaving at that site, HPS did not issue the $203,000 change order pursuant to the Subcontract and informed Ayala it would withhold its payment of the $203,000 change order amount until Ayala

Bernardino County Superior Court, a notice of posting of jury fees in that case (which case was subsequently transferred to the Kern County Superior Court), a complaint filed by HPS against Ayala in the San Diego County Superior Court (case No. 37-2014-00043232), and Ayala's answer filed in that case, which requests we deny. On August 21, 2020, HPS filed an RJN asking that we take judicial notice of an order granting a motion for summary judgment and the subsequent judgment filed in the Kern County Superior Court case. We deny that request. On October 13, 2020, Ayala filed an RJN asking that we take judicial notice of a notice of appeal filed in the Kern County Superior Court case. We deny that request.

repaired the heave damage. When Ayala refused to repair that damage, HPS made the repairs at a cost of $199,559.34.

In May 2011, Ayala filed a complaint against HPS and other defendants, alleging causes of action, inter alia, for breach of contract for failure to pay Ayala for all work it performed under the Subcontract and seeking $451,113.98 in compensatory damages. In July, Ayala filed a first amended complaint that realleged its breach of contract cause of action seeking $451,113.98 in damages. In October, Ayala filed its operative second amended complaint that realleged its breach of contract cause of action seeking $451,113.98 in damages and alleged other causes of action.[4]

In July 2012, HPS filed a cross-complaint against Ayala and City, alleging causes of action, inter alia, for breach of contract for Ayala's failure to repair the freeway heave and seeking recovery of the costs HPS incurred to repair the heave. In particular, paragraph 14 of the cross-complaint alleged: "Ayala breached the Subcontract by failing to perform all of the conditions, covenants, and promises required to be performed on its part under the Subcontract, in that it failed to repair its construction work which allegedly caused the [h]eaving, and for which HPS incurred costs to repair."

In March 2015, HPS filed a first amended cross-complaint, alleging causes of action for, inter alia, breach of contract for Ayala's failure to properly perform work under the Subcontract. In particular, paragraph 20 of the first amended cross-complaint alleged: "As a result of the aforesaid acts

---

[4]    In particular, paragraph 9 of the second amended complaint alleged: "There is now due, owing and unpaid to [Ayala] for and on the account thereof for labor and materials furnished to the work of improvement in the [Subcontract] together with damages for delay in the sum of at least $451,113.98, after deducting all just credits and offsets."

6

and/or omissions of Ayala, during the installation of the 36 inch casing, [Ayala] failed to properly control its grouting operating [*sic*] and injected excessive grout which caused or otherwise contributed to the heave, and caused the resulting damage to the Interstate freeway and underlying areas." HPS sought compensatory damages in an amount to be proved at trial and such other relief as the court considered proper.

In January 2016, a jury trial was conducted on the second amended complaint and first amended cross-complaint. During Ayala's opening statement to the jury, Ayala stated that City, HPS, and Ayala had agreed to a change order providing that Ayala would be paid $203,000 for the different site conditions that required extra work. Ayala stated that although HPS received the $203,000 amount from City, HPS had not yet paid that amount to Ayala.

In its opening statement, HPS stated that it had never disputed that there was a change order providing for $203,000 in additional compensation for Ayala or that HPS had received the $203,000. HPS stated that it had not paid Ayala the $203,000 amount because HPS believed Ayala had caused the heave of the I-8 freeway pavement by improper pressure grouting, but Ayala refused to repair the damage. HPS stated that it had the right to withhold money otherwise due Ayala under the Subcontract because of that damage to the freeway and the costs HPS incurred to repair it.

During the jury trial, the parties presented testimony of various percipient and expert witnesses and submitted the Subcontract and other exhibits into evidence. On the last day of the trial, the trial court granted Ayala's motion to amend its complaint to conform to proof by adding a common count for money had and received.

In closing argument, Ayala argued that City, HPS, and Ayala agreed that Ayala was to receive $203,000 for its extra work pursuant to the change order issued by City, but HPS had retained the $203,000 amount despite having received it from City, and argued that HPS had no right to withhold the $203,000 amount until Ayala made the repairs for the heave damage. In its closing, HPS argued that it was entitled to withhold part of Ayala's compensation pursuant to the Subcontract and that Ayala owed it $197,761 for its cost of repairing the heave damage.

In its special verdict form 1, the jury returned a special verdict on Ayala's second amended complaint, finding in favor of HPS on Ayala's breach of contract cause of action, but in favor of Ayala on its common count for money had and received, and finding Ayala's damages were $249,470. In its special verdict form 2, the jury returned a special verdict on HPS's first amended cross-complaint, finding in favor of Ayala on HPS's causes of action for breach of contract.

The trial court entered judgment in the amount of $249,470 in compensatory damages against HPS and the other defendants. The court granted Ayala's motion for attorney fees in the amount of $227,945 as the prevailing party in its action against HPS, but denied its motion for attorney fees incurred in defending against HPS's cross-complaint. The court subsequently entered an amended judgment awarding Ayala a total of $605,110.14, consisting of $249,470.00 in compensatory damages, $94,733.33 in prejudgment interest, $227,945.00 for attorney fees, and $32,961.81 in costs.

On appeal, in *Ayala I*, we reversed the amended judgment to the extent it found in favor of Ayala on its common count for money had and received and also reversed the court's awards to Ayala of attorney fees, costs, and

8

prejudgment interest. (*Ayala I, supra*, at pp. 28, 40-41.) We remanded the matter with directions that the trial court conduct further proceedings and enter a new judgment consistent with our opinion. (*Ayala I*, at p. 40.) Also, because HPS prevailed on its appeal, we concluded that HPS was entitled to its costs on appeal. (*Ayala I*, at p. 41.)

On remand, HPS filed a motion for attorney fees and costs, seeking a determination that it was the prevailing party on the contract claims in this action within the meaning of the Subcontract's attorney fee provision and an award of attorney fees pursuant to that provision.[5] In support of its motion, HPS cited section 25 of the Subcontract, which, as amended, provided:

> "In the event any legal action or proceeding arising out of this Agreement is brought by either party to this Agreement, the prevailing party shall be awarded, in addition to any other relief that may be granted, the actual attorney's fees, costs, including expert witness fees, and expenses incurred in the action or proceeding by the prevailing party."

HPS argued that it obtained the greater relief on the contract claims, asserting: "[HPS] had one litigation objective: to have Ayala bear the costs of the repairs for the heave. HPS achieved that result when the appellate court reversed the judgment thereby assuring that HPS would not bear those costs." HPS further argued that Ayala, in turn, "achieved virtually none of its litigation objectives." It noted that Ayala originally sought $451,113.98 in breach of contract damages, but later sought only $203,000 on its contract claim and failed to recover any amount on that claim at trial. HPS argued that although the results of the contract claims were technically "mixed," it

---

[5]     As we discuss in addressing Ayala's cross-appeal *post*, HPS's motion also sought awards of its statutory costs and other costs in addition thereto.

should nevertheless be found to the prevailing party on the contract claims because its cross-complaint was defensive in nature in that if it defeated Ayala's contract claims (as it ultimately did), HPS would not be able to recover on its cross-claims. HPS argued that it "never sought both the costs of the [heave] repairs and the right to offset those costs under the Subcontract." Therefore, HPS argued that "[t]his is a case of total victory on the part of HPS." As the purported prevailing party on the contract claims, HPS sought an award of $594,297.50 in attorney fees pursuant to the Subcontract's attorney fee provision.[6]

Ayala filed a memorandum opposing HPS's motion for attorney fees. Ayala argued that HPS was not the prevailing party on the contract claims because HPS did not recover anything on its cross-claim against Ayala for the cost of repairing the freeway heave damage. Ayala also argued that the jury found HPS did not do all, or substantially all, of the significant things that the Subcontract required it to do and was not excused from doing those things. In contrast, the jury found that Ayala did do all, or substantially all, of the significant things that the Subcontract required it to do or was excused from doing those things. Ayala noted that the reason the jury did not award its relief on its contract claim against HPS was because the jury found not all of the conditions to HPS's performance had occurred yet. Ayala argued it, and not HPS, had therefore accomplished more of its litigation objectives on the contract claims. Accordingly, Ayala argued the court should deny HPS's motion for attorney fees as the prevailing party under the Subcontract's attorney fee provision.

---

[6]    HPS subsequently filed an amended motion reducing the amount of attorney fees it sought from $594,297.50 to $579,838.50.

10

In its reply to Ayala's opposition, HPS argued that it obtained the greater relief on the contract claims because the results of the trial allowed it to retain the $203,000 amount. HPS argued that because Ayala originally sought $451,113.98 in compensatory damages and later reduced that amount to $203,000 and HPS's only litigation objective was to have Ayala make the heave repairs, HPS prevailed on its only litigation objective when Ayala did not recover anything on its contract claim against HPS.

After hearing arguments of counsel, the court issued an order denying HPS's motion for attorney fees and expressly found "there was no prevailing party under the [Subcontract] for the reasons set forth in the Court's tentative ruling." In its tentative ruling, which was incorporated into its order, the court stated that HPS incorrectly argued that its only litigation objective was to have Ayala bear the costs of the heave repairs and that HPS ultimately accomplished that objective on appeal in *Ayala I*. In particular, the court noted that HPS's first amended cross-complaint alleged Ayala breached the Subcontract by not repairing the heave damage *and* by not indemnifying HPS for the costs, expenses, attorney fees, and expert witness fees it incurred in connection with the heave and resulting dispute. The court stated:

> "These allegations and positions make clear that the main action and the cross-claim were each based on different 'pots' of money. The increased construction costs resulting in the change order were not related to correcting the heave issue. HPS's litigation objective in defending the main action was to avoid making the additional payment for the change order. In contrast, its cross-claim was premised on recouping a separate sum for its work correcting the 'heave' issue. Theoretically, HPS could have avoided payment on the change order, and at the same time obtained reimbursement for its work correcting the heaving. If this were not the case, there would have been no reason to

11

initiate the cross-complaint.  The set-off for the cost of correcting the heave issue could have been asserted as a defense to the main action.  In addition, even assuming the amount HPS withheld from Ayala was the same amount as was expended by HPS to repair the heave, the [first amended cross-complaint] also sought indemnity for all other ancillary costs associated with the heave, including attorney fees and expert witness fees.  Such ancillary costs could be sizable, and would not necessarily be recoverable via HPS's defense of the main action."

Accordingly, the court concluded:  "In sum, the pleadings, evidence and positions of the parties demonstrate that HPS's First Amended Cross-Complaint presented a separate, significant litigation objective that HPS failed to achieve.  Thus, neither party prevailed on the contract and the claim for attorney fees is denied on this basis."

B

" ' " 'An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the "determination of whether the criteria for an award of attorney fees and costs have been met is a question of law." [Citations.]' " ' [Citation.]  An issue of law concerning entitlement to attorney fees is reviewed de novo." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)  Likewise, we apply de novo review and exercise our independent judgment in interpreting a contract if there is no disputed extrinsic evidence on its interpretation. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1336.)

"Code of Civil Procedure section 1021 provides the basic right to an award of attorney fees." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*).)  Code of Civil Procedure section 1021 provides that, in general, "the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied,

12

of the parties . . . ."  However, "[t]here is nothing in [Code of Civil Procedure section 1021] that limits its application to contract actions alone.  It is quite clear . . . that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract."  (*Xuereb*, at p. 1341.)

Furthermore, Civil Code section 1717 provides for reciprocity of contractual attorney fee provisions, stating:

> "(a)  In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.  [¶]  Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract . . . .  [¶]  . . .  [¶]
>
> "(b)(1)  The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section . . . .  [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section."

"[Civil Code] section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, . . . when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.'  [Citation.]  . . .  [I]t has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, [Civil Code] section 1717 permits that party's

13

recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611 (*Santisas*), quoting *North Associates v. Bell* (1986) 184 Cal.App.3d 860, 865.)

The limited purpose of Civil Code section 1717 is to establish mutuality of remedy and is triggered when there is a unilateral contractual provision that provides attorney fees are available to only one of the contracting parties. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 (*Hsu*).) Civil Code section 1717 is not an independent statutory basis for recovering attorney fees (*Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 79), but instead "simply transforms a unilateral contractual right into a reciprocal right." (*Hambrose Reserve, Ltd. v. Faitz* (1992) 9 Cal.App.4th 129, 132.)

"Civil Code section 1717 has a limited application. It covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb, supra*, 3 Cal.App.4th at p. 1342.) "The determination of the party prevailing *on the contract* for purposes of awarding attorney fees under [Civil Code] section 1717 must be made independently of the determination of the party prevailing *in the overall action* for purposes of awarding costs under Code of Civil Procedure section 1032." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 239 (*Douglas E. Barnhart, Inc.*).)

"To achieve its goal, [Civil Code section 1717] generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu, supra*, 9 Cal.4th at pp. 870-871.) *Hsu* noted that in 1987 the Legislature amended Civil Code section 1717 to replace "the term

14

'prevailing party' with the term 'party prevailing on the contract,' evidently to emphasize that *the determination of prevailing party for purposes of contractual attorney fees was to be made without reference to the success or failure of noncontract claims*." (*Hsu*, at pp. 873-874, italics added.) In the circumstances of its case, *Hsu* concluded: "When a defendant obtains a simple, unqualified victory by defeating the only contract claim in the action*,* [Civil Code] section 1717 entitles the successful defendant to recover reasonable attorney fees incurred in defense of that claim if the contract contained a provision for attorney fees." (*Hsu*, at p. 877.) Alternatively stated, "when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under [Civil Code] section 1717 as a matter of law." (*Hsu*, at p. 876.)

"The trial court ruling on a motion for fees under [Civil Code] section 1717 is vested with discretion in determining which party has prevailed on the contract, or that no party has [prevailed]." (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 973.) "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott Co.*).) An abuse of discretion "occurs only when the trial court acts in an ' " ' "arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " ' " (*Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 366.)

"If . . . the contract allows the prevailing party to recover attorney fees but does not define 'prevailing party' or expressly either authorize or bar recovery of attorney fees in the event an action is dismissed, a court may base

15

its attorney fees decision on a *pragmatic* definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Santisas, supra*, 17 Cal.4th at p. 622, italics added.) In assessing litigation success, courts should respect substance rather than form and, to that extent, be guided by equitable considerations. (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1156; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1019.) "Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought." (*Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1398 (*Deane Gardenhome Assn.*), quoted with approval in *Hsu, supra*, 9 Cal.4th at p. 875.) *Hsu* stated: "[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu*, at p. 876.)

C

HPS argues that the court erred by denying its motion for attorney fees as the prevailing party on the contract claims in this action. As quoted *ante*, section 25 of the Subcontract provided: "In the event any legal action or proceeding arising out of this Agreement is brought by either party to this Agreement, the prevailing party shall be awarded, in addition to any other relief that may be granted, the actual attorney's fees . . . incurred in the action or proceeding by the prevailing party." The parties do not dispute that

16

the second amended complaint and first amended cross-complaint arose out of the Subcontract within the meaning of that contractual attorney fee provision, nor do they dispute that a prevailing party on the contract claims in this action is entitled to an award of its actual attorney fees incurred in this action pursuant to that attorney fee provision. Instead, HPS argues, in particular, that the court abused its discretion by finding there was no prevailing party on the contract claims in this action and, in particular, by not finding HPS was the prevailing party.

Based on our review of the record on appeal, we conclude the court did not abuse its discretion by finding there was no prevailing party on the contract claims in this action. In its original, first amended, and second amended complaints, Ayala alleged that HPS breached the Subcontract by not paying it amounts due thereunder (i.e., for the extra boring work Ayala performed because of different site conditions at the intersection of I-8 and I-15). Although Ayala sought $451,113.98 in compensatory damages in each version of its complaints and later reduced that amount to $203,000 at trial, Ayala consistently sought compensatory damages for the extra boring work it performed because of those different site conditions. Therefore, the trial court reasonably concluded that Ayala's primary litigation objective was to obtain compensatory damages for that extra work.

In contrast, in its cross-complaint and first amended cross-complaint, HPS alleged that Ayala breached the Subcontract by failing to repair the I-8 freeway heave and sought compensatory damages in the amount of the costs it incurred to repair the heave, which amount would be proven at trial. Furthermore, HPS alleged a separate breach of contract cause of action seeking indemnity from Ayala under the Subcontract's express indemnity provision. HPS alleged: "HPS has incurred costs, expenses, attorney's fees

17

and expert witness fees in connection with the heaving and the demand by City to repair the heave and restore the affected paving on Interstate 8." HPS sought to recover those costs and expenses from Ayala pursuant to the Subcontract's indemnity provision. At trial, HPS argued that Ayala owed it, inter alia, $197,761 for its cost of repairing the heave damage. Therefore, the trial court reasonably concluded that HPS's primary litigation objective was to obtain both compensatory damages in the amount of the costs it incurred to repair the freeway heave *and* indemnification for costs and expenses it incurred as a result of the heave dispute.

The jury returned special verdicts on Ayala's second amended complaint and HPS's first amended cross-complaint, finding in favor of HPS on Ayala's breach of contract cause of action and in favor of Ayala on HPS's causes of action for breach of contract. Therefore, neither party recovered anything on their respective breach of contract causes of action.[7]

Because neither party achieved a complete victory on all the contract claims, the trial court had discretion to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees. (*Scott Co.*, *supra*, 20 Cal.4th at p. 1109.) A determination of no prevailing party typically results when both parties seek relief, but neither party prevails. (*Hsu*, *supra*, 9 Cal.4th at p. 875; *Deane Gardenhome Assn.*, *supra*, 13 Cal.App.4th at p. 1398.) Furthermore, because section 25 of the Subcontract did not define the term "prevailing party," the court could make its attorney fees determination based on a pragmatic

---

[7] Because in *Ayala I* we reversed the jury's verdict to the extent it found in favor of Ayala on its common count for money had and received (which was not a contract cause of action), we need not address that finding in the context of Ayala's litigation objective for its breach of contract cause of action.

evaluation of the extent to which each party realized its litigation objectives. (*Santisas*, *supra*, 17 Cal.4th at p. 622.) In particular, in making that determination, the court was to compare the relief awarded, if any, on the contract claims with the parties' demands on those claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. (*Hsu*, at p. 876.) In general, the court therefore was to make the prevailing party determination by comparing the extent to which each party succeeded and failed to succeed in its contentions. (*Ibid.*)

Based on our review of the record, we conclude the court properly exercised its discretion in finding neither party was the prevailing party on the contract claims within the meaning of section 25 of the Subcontract. The court initially discussed *Hsu*'s test for determining which party, if any, prevailed on the contract claims. The court then applied that test to the circumstances in this case. The court implicitly found that Ayala did not achieve its litigation objective because the jury did not award it any relief on the breach of contract cause of action in its second amended complaint, which alleged that HPS breached the Subcontract by not paying Ayala for the extra boring work for different site conditions.

In determining whether HPS achieved its litigation objectives, the court compared HPS's litigation objective in defending Ayala's second amended complaint with HPS's litigation objective in filing its cross-claims against Ayala. In so doing, the court correctly noted that HPS's first amended cross-complaint alleged Ayala breached the Subcontract by both: (1) not repairing the heave damage; and (2) not indemnifying HPS for the costs, expenses, attorney fees, and expert witness fees it incurred in connection with the heave and resulting dispute. The court correctly noted that while HPS's defense of Ayala's contract claim could have resulted in its

19

avoidance of paying for Ayala's extra work for different site conditions, HPS's first amended cross-complaint sought not only recovery of HPS's cost of repairing the heave damage, but also indemnity for all ancillary costs incurred by HPS related to the heave damage, including attorney fees and expert witness fees. The court therefore balanced HPS's litigation success in defending against Ayala's breach of contract claim for extra work performed for different site conditions against HPS's failure to achieve any of its litigation objectives as reflected in the breach of contract causes of action alleged in its first amended cross-complaint.[8] We conclude that the court acted reasonably, and within its discretion, by finding that both Ayala and HPS failed to achieve their litigation objectives and, comparing their respective lack of litigation success, finding that neither party was the prevailing party on the contract claims within the meaning of section 25 of the Subcontract. (*Hsu, supra*, 9 Cal.4th at p. 875; *Santisas, supra*, 17 Cal.4th at p. 622; *Scott Co., supra*, 20 Cal.4th at p. 1109; *Deane Gardenhome Assn., supra*, 13 Cal.App.4th at p. 1398; cf. *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 [trial court did not abuse its discretion by finding neither party prevailed on contract claims where jury denied relief on complaint and cross-complaint].)

D

HPS argues that the court could have viewed HPS's litigation objectives and success differently than it did and instead found that HPS achieved its primary litigation objective of not paying Ayala for its extra work until Ayala paid HPS for its costs of repairing the heave damage. However,

---

[8]    In that respect, contrary to HPS's assertion, the court correctly noted that Ayala and HPS, in effect, sought different "pots" of money in their contract claims against each other.

in so arguing, HPS misconstrues and/or misapplies the applicable abuse of discretion standard of review discussed *ante*.9 In particular, HPS argues that it had only one litigation objective in both defending Ayala's contract claim and filing its own contract cross-claims—i.e., to hold Ayala responsible for the costs to repair the heave damage. HPS further argues that its reason for withholding payment to Ayala for its extra work for different site conditions was simply to make Ayala pay the costs HPS incurred for repairing the heave damage, which HPS believed was caused by Ayala. Nevertheless, we conclude that assuming that was HPS's sole litigation objective, the trial court could nevertheless reasonably find that HPS did not achieve that litigation objective because the jury found in favor of Ayala on HPS's first amended cross-complaint which sought to recover the costs HPS incurred to repair the heave damage and indemnity for all litigation and other costs and expenses it incurred as a result of the heave dispute. Because the jury found Ayala not liable for HPS's costs of repairing the heave damage and the related costs of the heave dispute, the court reasonably found that HPS did not prevail on its litigation objective and therefore was not the prevailing party on the contract claims.10 HPS does not cite any apposite

---

9     To the extent HPS separately argues in its opening brief that HPS was entitled to its attorney fees as a matter of law, it does not cite any case or other authority holding that when both parties fail to recover any relief on their complaint and cross-complaint, the cross-complainant is necessarily the prevailing party as a matter of law. Furthermore, HPS does not expressly repeat that argument in its reply brief, thereby possibly abandoning that novel theory. Nevertheless, absent any supporting authority for HPS's novel theory, we find no merit to its argument and decline to discuss it further.

10     HPS argues hypothetically that if it had not filed a cross-complaint and then obtained a defense verdict on Ayala's second amended complaint, it would necessarily be the prevailing party for purposes of section 25 of the

case in support of its position or otherwise persuade us to reach a contrary conclusion.

Furthermore, HPS's focus on the amount originally sought by Ayala for its extra work ($451,113.98) with the reduced amount it sought at trial ($203,000) does not show HPS was necessarily the prevailing party for purposes of section 25 of the Subcontract. As discussed *ante*, regardless of the amount of damages sought by Ayala for its extra work, the jury found in favor of HPS and therefore Ayala did not achieve its litigation objective on its contract claim against HPS. Yet, the court properly balanced Ayala's failure to achieve its litigation objective against HPS's failure to achieve its litigation objective on its contract cross-claims against Ayala and, based thereon, reasonably found that neither party prevailed on the contract claims for purposes of section 25 of the Subcontract. In particular, although HPS asserts its contract cross-claims were solely "defensive" in nature, the court

---

Subcontract. While that may be true, that hypothetical does not support HPS's apparent argument that its failure to achieve any litigation success on its first amended cross-complaint is, in effect, irrelevant to the court's balancing of the parties' litigation success on the contract claims. By filing its cross-claims for recovery of the costs to repair the heave damage and the related costs of the heave dispute, the court could reasonably find that HPS had the litigation objective to recover those costs and ultimately failed to achieve any success on that objective when the jury found in favor of Ayala on those cross-claims. Furthermore, contrary to HPS's assertion, our opinion in *Ayala I* did not conclude, either implicitly or expressly, or otherwise have the effect of holding, that HPS achieved its litigation objective of requiring Ayala to pay the cost to repair the heave damage or related litigation costs. Rather, because *Ayala I* did not reverse the jury's finding in favor of Ayala on HPS's cross-claims, *Ayala I* is consistent with the trial court's determination on remand that neither party prevailed on the contract claims.

could nevertheless reasonably disagree and find that HPS did not achieve any litigation success on its cross-claims.[11]

*AYALA'S CROSS-APPEAL*

II

*Award to HPS of Expert Witness Fees*

In its cross-appeal, Ayala contends that the trial court erred by awarding HPS its expert witness fees as the prevailing party under the Subcontract. Ayala asserts that because the court had found neither party had prevailed under section 25 of the Subcontract for purposes of an award of attorney fees, the court erred by inconsistently awarding HPS its expert witness fees as the prevailing party pursuant to section 25 of the Subcontract.

A

On remand after *Ayala I*, HPS filed a memorandum of costs, seeking, inter alia, an award of its expert witness fees in the amount of $55,468. HPS also filed a motion for statutory costs as the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4)[12] and additional costs, including $55,468 in expert witness fees, as the prevailing party on the contract claims under section 25 of the Subcontract. In particular, HPS sought an award of its expert witness fees pursuant to section 25 of the Subcontract, which, as quoted *ante*, stated in pertinent part:

---

[11] Contrary to HPS's assertion, the record shows the trial court did, in fact, compare the parties' relative litigation success on their contract claims and, in so doing, reasonably found that neither party prevailed on the contract claims.

[12] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

23

"In the event any legal action or proceeding arising out of this Agreement is brought by either party to this Agreement, the prevailing party shall be awarded . . . costs, including *expert witness fees*, and expenses incurred in the action or proceeding by the prevailing party." (Italics added.)

HPS's motion did not separately argue it was entitled to an award of its expert witness fees based solely on sections 1032, subdivision (a)(4) and 1033.5.

Ayala filed motions to tax HPS's costs, arguing, inter alia, that HPS's expert witness fees were not recoverable pursuant to section 1033.5. Ayala argued that because the court did not order any expert witnesses, HPS could not recover its expert witness fees pursuant to section 1033.5, subdivision (b)(1). Ayala also filed memoranda of points and authorities opposing HPS's motion for awards of attorney fees and costs, arguing that HPS was not the prevailing party on the contract claims pursuant to section 25 of the Subcontract.

HPS opposed Ayala's motions to tax its costs, arguing it was entitled to an award of all of its costs, including expert witness fees, as the prevailing party on the contract claims under section 25 of the Subcontract. HPS noted that Ayala had sought its expert witness fees after trial under that contractual provision.

On April 11, 2019, the court issued an order denying Ayala's motion to tax HPS's expert witness fees as costs. The court stated:

"Item 16.b. seeks $55,468.00 for expert witness fees. It is undisputed that this amount is not an 'ordinary' cost item recoverable pursuant to . . . section 1033.5 (i.e., a section 998 offer was not served). However, the [Subcontract], as amended, provides: [quotes section 25 of the Subcontract]. When parties broaden the scope of an attorney's fees provision to also encompass non-attorney fee costs, the

24

Court will not limit costs recoverable to the ordinary costs of suit articulated in . . . section 1033.5. See <u>Arntz Contracting Co.</u> v. <u>St. Paul Fire & Marine Ins. Co.</u> (1996) 47 Cal.App.4th 464, 491, 492. Ayala made this argument in its previous briefing before this Court, and it is estopped from now arguing that HPS is limited to the recovery of statutory costs. Thus, this cost item will not be taxed."

The court's amended judgment included those expert witness fees in its award of costs to HPS.

B

Section 1032, subdivision (a)(4) provides in part: " 'Prevailing party' includes . . . a defendant where neither plaintiff nor defendant obtains any relief . . . ." Section 1032, subdivision (b) provides: "Except as otherwise provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Section 1033.5, subdivision (a) provides in part: "The following items are allowable as costs under Section 1032: [¶] . . . [¶] (8) Fees of expert witness ordered by the court. . . ." Section 1033.5, subdivision (b) provides: "The following items are *not* allowable as costs, except when expressly authorized by law: [¶] (1) *Fees of experts not ordered by the court*." (Italics added.)

"The right to recover any of [costs of litigation] is determined entirely by statute." (*Davis v. KGO-T.V.* (1998) 17 Cal.4th 436, 439.) "If the items appearing in a cost bill appear to be proper charges [under section 1033.5], the burden is on the party seeking to tax costs to show that they were not reasonable or necessary. On the other hand, if the items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs. [Citations.] Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] *However, because*

25

*the right to costs is governed strictly by statute* [citation] *a court has no discretion to award costs not statutorily authorized.* [Citations.]" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 (*Ladas*).) In particular, "[t]he statutory provisions dealing with the compensation of experts in general do not provide for the recovery of such expenses in a cost award." (*Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1624.) "[T]he mere filing of a motion to tax costs may be a 'proper objection' to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face." (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131 (*Nelson*).)

As stated *ante*, "[t]he determination of the party prevailing *on the contract* for purposes of awarding attorney fees under [Civil Code] section 1717 must be made independently of the determination of the party prevailing *in the overall action* for purposes of awarding costs under . . . section 1032." (*Douglas E. Barnhart, Inc.*, *supra*, 211 Cal.App.4th at p. 239.) "Courts have consistently held the prevailing party for the award of costs under section 1032 is not necessarily the prevailing party for the award of attorney's fees in contract actions under [Civil Code] section 1717." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1142.) "The definition of prevailing party under [Civil Code] section 1717 thus differs significantly from section 1032." (*Id.* at p. 1143.)

C

Ayala asserts the court erred by awarding HPS its expert witness fees because: (1) the court did not order any expert witnesses, the fees for which would have been recoverable by a prevailing party under section 1033.5, subdivision (a)(8); and (2) the court found that neither party was the prevailing party under section 25 of the Subcontract, thereby providing no basis for an award of costs under that provision. We agree.

26

The court initially (and correctly) found, and HPS does not dispute on appeal, that HPS was not entitled to its expert witness fees pursuant to section 1033.5, subdivision (a)(8). Clearly, the court did not order any expert witnesses in this case for which an award of expert witness fees as statutory costs could be awarded. Therefore, the only other basis on which the court could award HPS its expert witness fees was section 25 of the Subcontract. However, because, as discussed *ante*, the court properly found that there was no prevailing party on the contract claims within the meaning of section 25 of the Subcontract, the court could not award HPS its expert witness fees (or any other nonstatutory costs) under that contractual provision any more than it could award HPS its attorney fees under that provision.

Section 25 of the Subcontract provides that a prevailing party on the contract claims "shall be awarded . . . the actual attorney's fees, costs, including expert witness fees, and expenses incurred in the action or proceeding by the prevailing party." Under the express language of that provision, attorney fees and costs (such as expert witness fees) are treated in the same manner (i.e., they both may be awarded under the Subcontract only to a prevailing party on the contract claims). Therefore, if a court finds, as the court did in this case, that there was no prevailing party on the contract claims, neither party is entitled to an award of either attorney fees or costs under the Subcontract. Because the court found neither party prevailed on the contract claims, the court erred by finding HPS was entitled to an award of its expert witness fees pursuant to section 25 of the Subcontract.

Contrary to HPS's apparent assertion, there is no authority providing that costs may be treated disparately from attorney fees under a contractual attorney fee provision. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464 (*Arntz*), cited by HPS and the court, does not

27

so hold.  Regarding awards of costs under a contractual attorney fee and costs provision, *Arntz* merely observed that Civil Code section 1717's reciprocity provision applies to both attorney fees and costs and that contractual provisions may provide a broader standard for recovery of litigation costs than that provided by section 1033.5.  (*Arntz*, at pp. 491-492.)  To the extent the court interpreted *Arntz* as holding costs may be awarded under a contractual provision to a party found to have not prevailed on contract claims, the court misinterpreted that case and it provides no support for the award to HPS of its expert witness fees pursuant to section 25 of the Subcontract.

Furthermore, to the extent the court accepted HPS's argument that Ayala was estopped from arguing HPS was limited to recovery of statutory costs because Ayala initially argued after trial that it was entitled to nonstatutory costs as the prevailing party on the contract claims under section 25 of the Subcontract, we conclude that Ayala's initial argument provides no support for the court's award of nonstatutory costs to HPS even if Ayala is estopped from arguing otherwise.  As Ayala notes, it did *not* argue after trial that it was entitled to nonstatutory costs under the broader definition of costs under section 25 of the Subcontract even if it were found to not be the prevailing party on the contract claims.  Rather, Ayala argued, consistent with *Arntz*, that a contractual attorney fee and costs provision may provide for a broader definition of costs than does section 1033.5.  Therefore, to the extent HPS argued, and the court found, that Ayala was judicially or otherwise estopped from taking a contrary position on remand after *Ayala I*, that estoppel could have no effect on HPS's entitlement to nonstatutory costs, such as expert witness fees not ordered by the court, because, as discussed *ante*, the court found that neither party prevailed on the contract claims

28

within the meaning of section 25 of the Subcontract. HPS does not cite any case or other authority showing otherwise. Accordingly, we conclude the court abused its discretion by awarding HPS $55,468 for its expert witness fees.

III

*Award to HPS of Mediation Fees*

Ayala contends the court also erred by awarding HPS its mediation fees incurred for mediation of a different case. In particular, Ayala argues HPS did not carry its burden to prove that those mediation fees were reasonable and necessary for its litigation of this case.

A

On remand after *Ayala I*, HPS filed a memorandum of costs, seeking, inter alia, an award of its mediation fees in the amount of $4,030. HPS also filed a motion for statutory costs as the prevailing party under section 1032, subdivision (a)(4) and additional costs, including $4,030 in mediation fees, as the prevailing party on the contract claims under section 25 of the Subcontract.

Ayala filed motions to tax all of HPS's costs, including its mediation fees. HPS opposed Ayala's motions to tax its costs, arguing it was entitled to an award of all of its costs, including mediation fees, as the prevailing party on the contract claims under section 25 of the Subcontract. In particular, HPS argued: "These [mediation] fees were paid fee[s] and incurred in this lawsuit. [McCartney Decl. ¶¶8-9] While these costs might not otherwise be recoverable, due to the language in the [S]ubcontract, they are recoverable in this case." In the declaration of N. Thomas McCartney, HPS's counsel, in support of its opposition, he stated that HPS sought to recover, inter alia, mediator's fees of $4,030, as supported by invoices attached in Exhibit F.

29

That Exhibit F, as attached to his declaration, consisted of copies of, inter alia, two checks payable to Friedenberg Mediation in the amounts of $1,080 and $1,200, both dated February 22, 2017, and referencing "HPS v. Ayala Boring Mediation," and a letter from Friedenberg Mediation, dated February 9, 2017, requesting payment of invoices totaling $2,280 for its mediation of "HPS Mechanical v. Ayala Boring." The attached invoices reflect mediation sessions conducted on December 14, 2016, and January 9, 2017. Exhibit F also included a letter from Peter J. Ippolito, dated April 28, 2015, setting a mediation session for May 7, 2015, in the case of "Ayala Boring, Inc. and HPS Mechanical."

In its reply to HPS's opposition to its motion to tax HPS's costs, Ayala argued that HPS failed to show that the mediation fees it paid were reasonable and necessary to conduct this litigation. In particular, Ayala asserted that the mediation conducted by Friedenberg Mediation was with respect to a *different* lawsuit, namely, "*HPS Mechanical, Inc.* v. *Ayala Boring, Inc., et al.*, SDSC Case No. 37-2014-00043232-CU-BC-CTL." In support of its reply, Ayala submitted the declaration of Timothy D. Lucas, its counsel, who attached as Exhibit D a letter from Friedenberg Mediation, dated December 7, 2016, scheduling a mediation session for December 14, 2016. That letter contained a heading referring to "**HPS Mechanical** v. **Ayala Boring, et al.**" and "SDSC Case No. 37-2014-00043232-CU-BC-CTL." Also attached to Lucas's declaration was Exhibit E, which was the first page of a confidential mediation brief, dated December 9, 2016, to Friedenberg Mediation. The first page of that brief contained a heading referring to "**HPS Mechanical, Inc.** v. **Ayala Boring, Inc., et al.**" and "SDSC Case No. 37-2014-00043232-CU-BC-CTL." HPS did not object to the filing of Ayala's reply or Lucas's declaration and attached exhibits.

The court's order denying Ayala's motion to tax costs did not expressly address Ayala's objection to HPS's request for recovery of its mediation fees paid to Friedenberg Mediation, but by not striking those requested fees, the court implicitly denied Ayala's objection to those fees and included them in its award to HPS of $148,158.13 in trial costs.

B

Ayala asserts that the evidence submitted by the parties showed the mediation fees in the amount of $2,280 paid by HPS to Friedenberg Mediation were incurred for a different case and therefore not necessary for its litigation of the instant action. We agree.

Mediation fees are not expressly listed as recoverable costs in section 1033.5, subdivision (a). However, "[a]n item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' [Citation.]" (*Ladas*, *supra*, 19 Cal.App.4th at p. 774.) In particular, mediation fees may be awarded by a court in its discretion if the mediation was reasonably necessary in the conduct of the case. (§ 1033.5, subd. (c)(2), (4); *Berkeley Cement, Inc. v. Regents of University of California* (2019) 30 Cal.App.5th 1133, 1140, 1143 (*Berkeley Cement, Inc.*) [fees for voluntary mediation may be recoverable]; *Sanford v. Rasnick* (2016) 246 Cal.App.4th 1121, 1132-1133 (*Sanford*); *Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1207-1209 (*Gibson*) [fees for court-ordered mediation may be recoverable].)

Because the mediation fees sought by HPS did not necessarily appear to be recoverable on their face, Ayala's objection to HPS's memorandum of costs which included those fees shifted the burden to HPS to prove that the

requested mediation fees were reasonably necessary in the conduct of this litigation. (*Ladas*, *supra*, 19 Cal.App.4th at p. 774; *Nelson*, *supra*, 72 Cal.App.4th at p. 131 ["[T]he mere filing of a motion to tax costs may be a 'proper objection' to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face."].) Here, the descriptions on the multiple letters and invoices submitted by the parties clearly show that the mediation sessions conducted by Friedenberg Mediation related to an action by HPS against Ayala and, in particular, an action with a case number (i.e., case No. 37-2014-00043232-CU-BC-CTL) that was different from the instant case number (case No. 37-2011-00092049-CO-CU-CTL). Because the burden shifted to HPS, HPS was required to submit evidence showing that its requested mediation fees paid to Friedenberg Mediation were necessary in the instant litigation. (*Ladas*, at p. 774.) However, the record on appeal does not contain any evidence submitted by HPS showing that the mediation sessions conducted by Friedenberg Mediation pertained to the instant action.[13] On the contrary, the undisputed evidence shows those mediation fees were incurred not only in a *different* case, but also the mediation sessions for that different case occurred months *after* the trial in the instant case. Whereas the trial in this case was conducted in January 2016, the two mediation sessions in the different case did not occur until December 2016 and January 2017. Because there is no evidence to support a finding by the

---

[13] Assuming arguendo the Friedenberg mediation sessions in December 2016 and January 2017 related, at least in part, to posttrial mediation of the instant case, HPS has not shown how such posttrial mediation was "reasonably necessary to the conduct of the litigation" within the meaning of section 1033.5, subdivision (c)(2). (See *Gibson*, *supra*, 49 Cal.App.4th at p. 1209 [mediation done "at the earliest time and before a costly and time-consuming trial" is reasonably necessary to conduct of litigation under section 1033.5, subd. (c)(2)].)

court that those mediation fees were necessary to the conduct of the instant case, we conclude the court abused its discretion by awarding HPS mediation fees of $2,280 paid to Friedenberg Mediation.

## C

Contrary to HPS's assertion, the record does not support a finding that Ayala raised new facts or legal theories in its reply to HPS's opposition to its motion to tax costs or that HPS was prejudiced by the evidence Ayala submitted in support of in its reply.[14]  Rather, the evidence submitted *by HPS* in opposition to Ayala's motion to tax costs, as described *ante*, clearly showed that those mediation sessions related to a different case than the instant case.  In particular, Exhibit F, attached to McCartney's declaration, included copies of two checks payable to Friedenberg Mediation, both dated February 22, 2017, that referenced "HPS v. Ayala Boring Mediation," and invoices from Friedenberg Mediation, that reflected mediation sessions conducted on December 14, 2016 and January 9, 2017.  Because the trial in the instant case was conducted in January 2016, HPS and its counsel necessarily had knowledge that the mediation sessions conducted by Friedenberg Mediation in December 2016 and January 2017 could not possibly have been related to the instant case.  Therefore, when Ayala submitted evidence in support of its reply to HPS's opposition to its motion to

_____

[14]    Assuming arguendo that Ayala raised new facts or legal theories in its reply or in Lucas's declaration and attached Exhibits D and E, the record does not show that HPS made any objection in the trial court to that new evidence or theories and therefore forfeited or waived their consideration by the trial court.  (Cf. *People v. Waidla* (2000) 22 Cal.4th 690, 717 [appellant cannot challenge on appeal admission of hearsay evidence if he did not object to its admission in trial court]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725-726 [appellant forfeited challenge to admission of evidence because she did not object to it in trial court].)

tax costs (which evidence merely confirmed HPS's evidence showing that the mediation sessions conducted by Friedenberg Mediation related to a different case), Ayala was not raising any new facts or legal theories that could have prejudiced HPS. *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308 and *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, cited by HPS, are both factually and procedurally inapposite to this case and do not persuade us to reach a contrary conclusion. Furthermore, assuming arguendo that the court had, in its discretion, disregarded the purported new or late evidence submitted by Ayala in its reply, there nevertheless remained the undisputed evidence submitted by HPS that clearly showed the mediation sessions conducted by Friedenberg Mediation were not reasonably necessary to the conduct of the instant case. Accordingly, the $2,280 amount paid by HPS to Friedenberg Mediation was not recoverable as costs pursuant to section 1033.5 and the court erred by awarding those fees to HPS. (§ 1033.5, subd. (c)(2), (4); *Ladas, supra*, 19 Cal.App.4th at pp. 773-774; cf. *Berkeley Cement, Inc., supra*, 30 Cal.App.5th at pp. 1140, 1143; *Sanford, supra*, 246 Cal.App.4th at pp. 1132-1133; *Gibson, supra*, 49 Cal.App.4th at pp. 1207-1209.)

IV

*Award to HPS of Reporter's Fees as Costs on Appeal*

Ayala contends that the court also erred by awarding to HPS, as costs on appeal, the reporter's fees HPS paid for daily trial transcripts. In particular, Ayala argues the court abused its discretion by finding those fees were reasonable costs incurred by HPS in conduct of the appeals in *Ayala I*.

34

A

In *Ayala I*, we concluded that HPS was entitled to an award of its costs on appeal. On remand, HPS filed a memorandum of costs on appeal with the trial court, requesting, inter alia, an award of $12,864.22 for preparation of the reporter's transcript. Ayala filed a motion to tax HPS's costs on appeal, including the $12,864.22 amount HPS paid for the reporter's transcript. Ayala argued that HPS had not shown it had paid that amount for court reporter fees and that HPS must submit invoices or other documents to support that fee request.

HPS opposed Ayala's motion to tax its costs on appeal, arguing that the $12,864.22 amount was the cost it paid for the reporter's transcript on appeal. In support of its opposition, HPS submitted McCartney's declaration to which he attached an Exhibit D, described as one invoice for the appellate transcript. McCartney stated: "Due to the short amount of notice, I was not able to find the remaining invoice for this expense. However, I was able to locate an email referring to the payment of this amount, which is attached as Exhibit 'E.'" Exhibit D to McCartney's declaration included an invoice dated February 1, 2016 from Lois Mason Thompson, the court reporter, to McCartney in the amount of $9,160.76 for expedited copies of the "REPORTER'S TRIAL TRANSCRIPT OF PROCEEDINGS HELD ON JANUARY 12, 13, 14, 19, 20, 21, AND 25, 2016." Exhibit D also included a copy of a check, dated March 10, 2016, payable by McCartney's law firm to Thompson in the amount of $9,160.76. Exhibit E to McCartney's declaration consisted of a series of e-mails, dated in August and September 2016, between an assistant to McCartney and a clerk for the trial court's appeals section regarding HPS's share of the cost for preparation of the reporter's transcript. In particular, the clerk forwarded to McCartney's assistant an

35

e-mail he received from Thompson, the court reporter, in which she stated that an insufficient deposit had been made for preparation of the reporter's transcript for the appeal. In her e-mail, Thompson explained:

> "The appeals clerk was kind enough to provide me a copy of the designation [of the record on appeal]. As it turns out, three and [a] half days of trial were represented as having been transcribed that were not previously transcribed, a clear misrepresentation. That three and a half days need to be deposited. If all the deposit is not necessary, it will be returned to counsel. As for the days that were transcribed, counsel were notified at the time of trial that the transcripts they were being provided would not suffice as the appeal transcript as [they] did not include exhibit markings and additional work is required to prepare the transcript as required by the Court of Appeal. Daily transcripts do not allow time for that. This transcript exceeds 1850 pages. This transcript is prepared in electronic and printed format and is ready to be turned in. The money deposited is clearly not enough."

In his e-mail to McCartney's assistant, the clerk stated that HPS's one-half share of the additional fees for the reporter's transcript was $2,598.50 and that the additional cost for HPS's copy of the transcript was $1,105. Exhibit E therefore showed that HPS's additional cost for the reporter's transcript on appeal (i.e., in addition to the $9,160.78 amount HPS paid for the daily trial transcripts as shown in Exhibit D) was $3,703.50 (i.e., $2,598.50 plus $1,105).

In its reply to HPS's opposition to its motion to tax costs on appeal, Ayala argued that HPS was not entitled to recover, as costs on appeal, the $9,160.76 amount it paid for daily trial transcripts. In particular, Ayala argued that amounts paid for daily trial transcripts were not recoverable under section 1033.5, subdivision (b)(5), which provides that "[t]ranscripts of court proceedings not ordered by the court" are not allowable as costs, except when expressly authorized by law.

36

In its order denying Ayala's motion to tax HPS's costs on appeal, the trial court stated: "Item 3 seeks $12,864.82 for preparation of reporter's transcript. This cost is expressly permissible and is sufficiently documented within the opposition. This cost will not be taxed." Accordingly, the court's award to HPS of $205,095.63 in costs included the $9,160.76 amount paid by HPS for daily trial transcripts as part of its costs on appeal for the reporter's transcript.

B

Ayala asserts that the court abused its discretion by awarding HPS the $9,160.76 amount it paid for daily trial transcripts as part of its costs on appeal. Ayala argues, in a conclusory manner and without citation to any case or other authority, that because those daily trial transcripts were not ordered by the trial court, the court erred by including HPS's cost for those transcripts as part of its costs on appeal for the reporter's transcript.

California Rules of Court, rule 8.278(d)(1)[15] provides: "A party may recover only the following costs [on appeal], if reasonable: [¶] . . . [¶] (B) The amount the party paid for any portion of the record, whether an original or a copy or both. . . ." "As section 1033.5 does for trial-related costs, rule 8.278 enumerates '[r]ecoverable costs,' which it expressly provides are the only costs that may be recovered on appeal." (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 910 (*Stratton*).) Rule 8.278 "makes no reference to necessity as a fact in what part of the appellate record is recoverable as a cost." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 261.)

Neither party has cited, nor have we found, any case or other authority that addresses the instant question of whether the cost of daily trial

---

[15]     All references to rules are to the California Rules of Court.

transcripts, which are later modified by the court reporter and included in the reporter's transcript, may be awarded to a party as part of its costs on appeal. Here, by awarding HPS the $9,160.76 amount it paid for daily trial transcripts, the court implicitly found that that amount was both reasonable and recoverable as costs on appeal. In the absence of any authority to the contrary, we conclude the court acted within its discretion by so finding. The court could reasonably find that the reporter's daily trial transcripts, which apparently were prepared for seven days of the 10-day trial, were used by the reporter in her preparation of the reporter's transcript for the appeals in *Ayala I*. Those daily transcripts were apparently modified by the reporter to conform to appellate rule requirements and then included in the reporter's transcripts. Contrary to Ayala's assertion, section 1033.5, subdivision (b)(5), does not apply to costs on appeal and therefore does not show HPS's daily trial transcript costs were not recoverable as costs on appeal. (*Stratton, supra*, 30 Cal.App.5th at p. 910.) Furthermore, contrary to Ayala's apparent assertion, rule 8.278 does not require, nor are we aware of any other authority requiring, that a particular cost of appeal be incurred by a party only after it has filed a notice of appeal in order for it to be a recoverable cost on appeal. Therefore, although, as Ayala notes, HPS requested and paid for the daily trial transcripts before it filed its notice of cross-appeal, Ayala does not show that the timing of HPS's request and payment for, and the reporter's preparation of, those transcripts could not be reasonably found by the court to be recoverable as part of the record on appeal and therefore HPS's costs on appeal.

Furthermore, to the extent Ayala argues the cost of the reporter's transcripts for those seven trial days was unreasonable, it did not submit any evidence in the trial to support that argument. We infer the court, given its

38

presumed experience with fees commonly charged by court reporters, found that the $9,160.76 amount HPS paid for seven days of daily trial transcripts, which were then modified and incorporated into the reporter's transcript for *Ayala I*, was a reasonable amount and an appropriate cost on appeal under rule 8.278(d)(1)(B). Based on our review of the record, we conclude there is no evidence showing that amount was unreasonable or otherwise precluded by rule 8.278. Accordingly, we conclude the court did not abuse its discretion by awarding HPS that $9,160.76 amount as part of its costs on appeal.

V

*Award to HPS of Its Costs of Surety Bonds*

Ayala contends that the court also erred by awarding HPS the costs of the premiums it paid for a stop notice release bond and a surety bond on appeal.

A

Ayala's complaint included a stop notice cause of action against HPS and City, alleging that City was withholding payments from HPS that were sufficient to pay Ayala $451,113.98 for its extra work. HPS thereafter obtained a stop notice release bond, paying $67,664 in premiums, and Ayala's first amended complaint added a release bond cause of action against HPS and Explorer Insurance Company. Ayala's operative second amended complaint realleged those causes of action.

On remand after *Ayala I*, HPS filed a memorandum of costs, seeking recovery of $67,664 for premiums paid for the stop notice release bond (i.e., surety bond premiums). HPS also filed a memorandum of costs on appeal, seeking $42,231 for premiums paid on a surety bond on appeal. Ayala filed motions to tax HPS's trial costs, including the $67,664 amount HPS paid for surety bond premiums. Ayala argued that HPS did not provide any

39

documentation or other support for its request for an award of the $67,664 amount in surety bond premiums it paid and did not show any such surety bond was reasonable or necessary to its conduct of this action. Ayala also filed a motion to tax HPS's costs on appeal, including the $42,231 amount in surety bond premiums paid on appeal. Ayala argued that HPS did not provide any documentation or other support for its request for an award of the $42,231 amount in surety bond premiums it paid and did not explain why any such surety bond premiums were necessary to its conduct in the appeal.

HPS opposed Ayala's motions to tax its costs at trial and on appeal, arguing it was entitled to an award of all of its costs, including the $67,664 amount paid for stop notice release bond premiums and the $42,231 amount in surety bond premiums paid on appeal. HPS argued that it obtained a stop notice release bond after Ayala served a stop notice on City and its original complaint included a stop notice cause of action. It attached a declaration of Les E. DenHerder, HPS's president, stating that HPS had paid $67,664 in premiums for a stop notice release bond and argued that HPS was entitled to recover the cost of those premiums. He attached copies of invoices paid by HPS for the stop notice release bond. HPS also argued that it obtained a surety bond on appeal for which it paid $42,231 in premiums, which were recoverable pursuant to rule 8.278(d)(1)(F). It attached DenHerder's declaration in which he stated that HPS had paid $42,231 in premiums for the surety bond on appeal and that the bond was necessary to preserve HPS. He attached copies of invoices paid by HPS for the appellate bond it obtained to stay enforcement of the judgment against it pending the outcome of the appeal.

In its order denying Ayala's motions to tax HPS's costs at trial and on appeal, the court found that the $67,664 amount in premiums paid by HPS

40

for the stop notice release bond was sufficiently documented by HPS in its opposition and was a permissible cost.  The court further found that the $42,231 amount in premiums paid by HPS for the surety bond on appeal was sufficiently documented by HPS in its opposition and was a permissible cost on appeal.

B

Section 1033.5, subdivision (a)(6) provides that "[p]remiums on necessary surety bonds" are allowable costs at trial that are recoverable by a prevailing party under section 1032.  Furthermore, section 995.250 provides: "If a statute allows costs to a party in an action or proceeding, the costs shall include all of the following:  [¶]  . . .  [¶]  (b) The premium on a bond reasonably paid by the party in connection with the action or proceeding, unless the court determines that the bond was unnecessary."

Regarding surety bonds on appeal, rule 8.278(d)(1)(F) provides that the prevailing party on appeal may recover as costs on appeal, if reasonable, "[t]he cost to procure a surety bond, including the premium, . . . unless the trial court determines the bond was unnecessary."  "[I]n considering [a] motion to tax costs claimed for posting an appeal bond, [a] trial court [is] not required to grant that motion *solely* because an alternative procedure to stay enforcement of the judgment was, or would be, available under [a statute].  In exercising its discretion in determining whether the appeal bond premiums were 'unnecessary' under section 995.250, subdivision (b), the court could *also* consider:  the expediency or inexpediency to [a party], as judgment debtor, of the alternative procedure, . . . ; and other additional expense and interference with its business operations, if any, the [party] would incur by utilization of the alternative procedure." (*Jewell v. Bank of America* (1990) 220 Cal.App.3d 934, 941 (*Jewell*).)

41

Alternatively stated, "the mere fact that an alternative procedure, which would have been less expensive, was available does not mandate that the option chosen was unreasonable or unnecessary." (*Rostack Investments, Inc. v. Sabella* (2019) 32 Cal.App.5th 70, 80 (*Rostack*).) "If 'reasonable' is to mean anything, it must mean reasonable to the appellant under all of the circumstances. It is reasonable for the appellant to choose the method that is cost-effective based on its own financial situation; not to be forced to choose what might be best for the respondent." (*Id.* at p. 82.) On appeal, a trial court's exercise of discretion in granting or denying a motion to tax costs must be upheld if substantial evidence supports its decision. (*Id.* at p. 80; *Jewell, supra*, 220 Cal.App.3d at p. 941.)

C

In its opening brief, Ayala asserts that the court abused its discretion by awarding HPS $67,664 in premiums for its stop notice release bond and $42,231 in premiums for its surety bond on appeal because those costs were not reasonably necessary. In support of its assertion, Ayala argues, in a conclusory manner, that: "Neither a stop notice release bond nor an appellate bond was reasonably necessary to defend the lawsuit or the appeal. HPS could have defended the underlying lawsuit as well as the appeal without the need for any bond." In so doing, Ayala has not carried its burden on appeal to show the trial court abused its discretion by impliedly finding the two bonds were reasonable and necessary and therefore recoverable costs at trial and on appeal. In particular, contrary to Ayala's assertion, the fact that HPS may have had potentially less expensive alternatives to obtaining the stop notice release bond or the surety bond on appeal (e.g., by withholding $249,470 in payments due Ayala for extra work, etc. or by reducing the amount of the stop notice release bond when Ayala reduced its extra work

42

demand to $203,000), does not show there was insufficient evidence to support the trial court's findings that the premiums for those bonds were reasonable and necessary to HPS's conduct of the trial and appeal. (§§ 995.250, subd. (b), 1033.5, subd. (a)(6); rule 8.278(d)(1); cf. *Rostack*, *supra*, 32 Cal.App.5th at pp. 80, 82; *Jewell*, *supra*, 220 Cal.App.3d at p. 941.)

Furthermore, contrary to Ayala's apparent assertion, HPS submitted sufficient evidence in support of its request for recovery of the premiums it paid for the two bonds. As discussed *ante*, HPS argued in the trial court that it obtained a stop notice release bond after Ayala served a stop notice on City and its original complaint included a stop notice cause of action. DenHerder's declaration stated that HPS had paid $67,664 in premiums for a stop notice release bond and argued that HPS was entitled to recover the cost of those premiums. He attached copies of invoices paid by HPS for the stop notice release bond. HPS also argued that it obtained a surety bond on appeal for which it paid $42,231 in premiums, which were recoverable pursuant to rule 8.278(d)(1)(F), and attached DenHerder's declaration in which he stated that HPS had paid $42,231 in premiums for the surety bond on appeal and that the bond was necessary to preserve HPS. He attached copies of invoices paid by HPS for the appellate bond it obtained to stay enforcement of the judgment against it pending the outcome of the appeal. Based on our review of the record, we conclude there is substantial evidence to support the court's exercise of discretion in awarding HPS the costs of the premiums it paid for the stop notice release bond and surety bond on appeal. To the extent Ayala cites evidence and/or inferences therefrom that would have supported a contrary finding by the court, it misconstrues and/or misapplies the applicable substantial evidence standard of review. (*Rostack*, *supra*, 32 Cal.App.5th at p. 80; *Jewell*, *supra*, 220 Cal.App.3d at p. 941.)

43

DISPOSITION

The order awarding HPS its costs and the amended judgment are reversed to the extent they awarded HPS $55,468 for expert witness fees and $2,280 for mediation fees incurred for a different case.  In all other respects, that order, the order denying HPS its attorney fees, and the amended judgment are affirmed.  The matter is remanded with directions that the court issue a new order awarding HPS its costs, as so reduced, and a second amended judgment consistent with this opinion.  The parties shall bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

GUERRERO, J.

44